(No. 55257.—

THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Appellant, v. THE INDUSTRIAL COMMISSION et al. (Excel Norwood, Appellee).

*Opinion filed November 18, 1982.*

RYAN, C.J., dissenting.

Patricia J. Whitten and Michael J. Murray, of Chicago (Reginald D. Taylor, of counsel), for appellant.

Leo F. Alt, of Chicago, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission found that petitioner, Excel Norwood, suffered accidental injuries arising out of and in the course of his employment by respondent, the board of education of the city of Chicago, and awarded petitioner worker's compensation for temporary total disability for 42$^{6/7}$ weeks, and for permanent and complete loss of use of the right leg to the extent of 17½%. Petitioner was also awarded $466 for necessary medical and hospital services. On review the Industrial Commission affirmed the award of the arbitrator, and finding that respondent, without just and good cause, refused payment of weekly compensation benefits for the period of temporary total disability, awarded petitioner the additional sum of $2,500, the statutory maximum, pursuant to section 19(*l*) of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.19(*l*)). The Commission also found that respondent unreasonably and vexatiously delayed payment of compensation for the entire period of temporary total incapacity and, pursuant to section 19(k) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.19(k)), assessed a penalty in the amount of 50% of the compensation award payable during that period. Pursuant to section 16 of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.16) it also awarded petitioner attorney fees in the amount of 20% of compensation awarded under sections 8(b), 19(*l*) and 19(k). Respondent sought *certiorari* in the circuit court of Cook County. The circuit court confirmed the award of the Industrial Commission and respondent

appealed. 73 Ill. 2d R. 302(a).

Petitioner was employed by respondent as a custodial worker at Gompers School. On May 1, 1979, while mopping a girls' washroom, petitioner was struck by a swinging door. The impact caused petitioner to bump his right knee against an adjacent wall. Petitioner testified that he experienced pain in his knee but completed the remaining one-half hour of his shift. The next day petitioner contacted the engineer-custodian, Mr. Pierece, and reported the accident to him. Two or three days after the accident petitioner filled out an accident report. On May 3, petitioner went to see his personal physician, who prescribed pain pills. On May 6, 1979, he was admitted into Woodlawn Hospital and remained there for five days. The hospital admission form indicates that the initial diagnosis was "severe right knee strain" and "bronchitis." While at the hospital petitioner was treated for bronchitis, hypertension, and the knee injury. The hospital records indicate that pain killers were prescribed by the hospital's physicians for the pain in petitioner's knee and that he underwent physical therapy. Petitioner continued his physical therapy on an out-patient basis, and his personal physician recommended that he use a cane to aid him while walking. On July 7, 1979, petitioner attempted to return to work. The engineer-custodian, Mr. Pierece, told petitioner to report "downtown" to be examined by a physician. Petitioner testified that he was given a blood pressure test, had his heart checked through the use of a stethoscope, and had his knee checked. He was then told that he was not released to go back to work. On cross-examination, respondent's attorney asked petitioner if he knew why the respondent's doctor would not let him go back to work. Petitioner testified, "*** he said my blood pressure is up too high plus my knee isn't well yet ***." The examining physician was not called as a witness.

In November 1979, petitioner went to the Veterans

Administration Hospital. He was scheduled to see an orthopedic surgeon, whom he saw early in December. He was given pain pills and antibiotics, and a rehabilitation program was set up for him. Also while at the V.A. hospital, the hospital staff discovered petitioner was holding his cane in the wrong hand, and he was taught to use a cane with the proper hand. Petitioner was told that if the swelling did not go away, surgery might have to be performed on his knee.

On February 25, 1980, petitioner saw another physician at respondent's downtown office. This doctor concluded that petitioner was ready to go back to work, but that he should avoid walking up and down stairs and all unnecessary similar activities.

A report by Dr. Leo Frederick Miller, dated October 31, 1979, was offered by the parties as a joint exhibit. This report had been sent to the attention of respondent's law department. One of the findings was that petitioner exhibited an internal derangement symptom complex that would require an arthrographic study and if that study turned out positive, the report recommended an arthroscopic examination and a possible surgical procedure. The report noted that the procedure had not been authorized because respondent's liability for the injury had not been determined. It concluded with the recommendation that if a causal relationship was established between the injury received on May 1, 1979, and the internal derangement symptom complex, the appropriate measures should be taken by the board.

Respondent contends that the Industrial Commission's imposition of penalties was contrary to the manifest weight of the evidence. Citing *Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297, respondent argues that no penalties may be imposed for delay in payment of compensation where an employer in good faith challenges its liability for such payments. Respondent asserts that

whether or not the accident occurred, the causal connection between the accident and the injuries received, and the period of temporary total disability were all placed in issue at the hearing on arbitration. Respondent notes that there were no witnesses to the occurrence on May 1, and that petitioner did not seek medical attention for his knee until two days after the occurrence. Respondent notes, too, that, while hospitalized, petitioner was treated for hypertension and bronchitis, which were in no way related to the alleged knee injury.

An employer's good-faith challenge to liability ordinarily will not subject it to penalties under the Workmen's Compensation Act. (*Chicago Transit Authority v. Industrial Com.* (1981), 86 Ill. 2d 101, 105; *Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297, 304.) The question whether an employer's conduct justifies the imposition of penalties is a factual question for the Commission. The employer's conduct is considered in terms of reasonableness, and the Commission's determination on this issue will not be disturbed unless it is against the manifest weight of the evidence. *McKay Plating Co. v. Industrial Com.* (1982), 91 Ill. 2d 198, 209; *Keystone Steel & Wire Co. v. Industrial Com.* (1981), 85 Ill. 2d 178; *Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297, 302-04.

On this record we cannot say that the Commission's findings that the failure to pay compensation was "without just and good cause" and that the delay was "unreasonable and vexatious" were against the manifest weight of the evidence. The record indicates that petitioner reported his injury to his supervisor the day following the accident. He saw a physician the next day. While respondent now contends that it vigorously contested the occurrence of the accident, it offered no testimony before either the arbitrator or the Industrial Commission. Respondent's attorney's cross-examination of petitioner attempted to show that his failure to return to work resulted from

health problems other than the knee injury. Respondent did not call its own physician before either the arbitrator or the Commission to dispute petitioner's statement that the doctor refused to let him return to work because his knee had not healed. Respondent also suggests that the hospital records clearly show that when he was first placed in the hospital petitioner was being treated for bronchitis and hypertension. While this is true, it is also true that the hospital records clearly indicate a diagnosed knee condition and treatment for that condition. An employer is not justified in refusing payment on the basis that the employee is being treated for an independent health problem at the same time he is being treated for a work-related accident. While other inferences may be drawn, the reasonable inferences drawn by the Commission from the evidence will not be disregarded simply because this court might have drawn other inferences. *Schoonover v. Industrial Com.* (1981), 86 Ill. 2d 321, 326.

Citing *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462, respondent contends that penalties may not be imposed pursuant to section 19(k) of the Workmen's Compensation Act before there has been a final award by the Commission. This contention was considered and rejected in *McKay Plating Co.* (91 Ill. 2d 198, 208-09).

For reasons stated, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE RYAN, dissenting:

Here, as in *Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 1, it appears that penalties under section 19(k) and section 19(*l*) (Ill. Rev. Stat. 1979, ch. 48, pars. 138.19(k), 138.19(*l*)) were awarded for the same delay in making payments of an award for temporary total disability. This court noted in *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462, that the provisions for penalties under both section 19(k) and section 19(*l*) are prem-

ised upon an award in favor of an employee and an unreasonable delay in payment of the award. As in my dissent in *Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 1, I again state that I think it is imperative that the legislature reconsider the various penalty provisions of the Workers' Compensation Act and clarify their applicability.

Although, as noted above, this court has held that it is necessary that there be an award before a penalty be assessed under either section discussed herein, I think there is language in both sections which indicates that the unreasonable failure to pay temporary total disability benefits when due, even before the arbitrator has made an award, may be grounds for assessing penalties. Without attempting to establish the historical reason for the apparent overlapping of these two sections, it may be noted that section 19(*l*) was not added to the Act until 1975. Prior to that time, this court had held that a proceeding under section 19(k) could be had only after an award had become final. (*Board of Education v. Industrial Com.* (1932), 351 Ill. 128, 131.) It may be that the legislature, by adding section 19(*l*) in 1975, was trying to say that penalties should be assessed for nonpayment of temporary total disability compensation prior to an award. However, the *Board of Education* construction of section 19(k) was followed in subsequent cases and, as indicated above in *Brinkmann,* was carried over and applied to section 19(*l*) after its adoption.

I believe that penalties should be available and should be awarded, even in the absence of a previous award, when there is an unreasonable or vexatious delay in making disability payments. If an employee is clearly entitled to temporary total disability benefits, his right to receive penalties for an unreasonable refusal to pay should not depend upon a prior award of temporary total disability benefits by the arbitrator. I can appreciate the fact that

the injured employee's living expenses continue even though he may not be working.

It must be remembered, however, that the General Assembly has seen fit to structure our workers' compensation act in the nature of an adversary proceeding. (For a discussion of compensation acts that are not adversary, see Popkin, *The Effect Of Representation In Nonadversary Proceedings—A Study Of Three Disability Programs,* 62 Cornell L. Rev. 989 (1977) (discussing proceedings under the Federal Employees' Compensation Act, as well as other Federal acts); O'Leary, *The Ontario System: Non-Adversary Workmen's Compensation,* 9 Trial 33 (1973) (discussing the Ontario Compensation Act).) A strict application of the penalty provisions of our act, however, may effectively destroy the adversary nature of the proceedings and lead to a reduction of or limitation on the participation of attorneys.

Formerly, the Industrial Commission and this court permitted recovery of penalties in only a very limited number of cases. Recently, however, the number of cases we review wherein the Industrial Commission has awarded penalties under sections 19(k) and 19(*l*) has been substantially increased, and this court, relying on the time-worn deference to the Industrial Commission, has upheld these awards.

Obviously, there has been a change in policy on the Industrial Commission. Such a change in policy may be administratively an effective way of coercing payments, curtailing appeals, and thus reducing the case load of the Industrial Commission. It must be remembered, however, that penalties must be assessed on the basis of unreasonable or vexatious delay, which depends on the manifest weight of the evidence present in a case, and is not determined by a change in policy on the Industrial Commission.

It now appears that we have reached the point where the employer can contest the payment of temporary total

disability benefits only at the peril of being substantially penalized for doing so. The opinion in this case holds that the employer's conduct is to be "considered in terms of reasonableness." (93 Ill. 2d at 25.) In *Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 1, 9, the majority defines the test as one of "objective reasonableness." These two opinions confer on the Industrial Commission substantial discretion in determining whether or not penalties should be imposed. Given the present climate to penalize employers that now prevails on the Industrial Commission, as demonstrated by the recent cases that have come to this court, I fear that the adversary system has been substantially curtailed, at least insofar as the employer is concerned.

It has been charged that, in recent years, this court has indulged in such an expansive interpretation of the Act as to make employers "virtual insurers of their employees' general health and welfare." (Kinzie, Nyhan, *Workers' Compensation: A System In Need,* 30 DePaul L. Rev. 347, 359 (1981).) It would appear that the change of policy on the Industrial Commission which restricts the employers' right to contest the employees' claims, and this court's deference to the Commission's assessment of penalties, justifies this accusation. A proceeding under the Workers' Compensation Act has come to resemble a baseball game wherein only the employee is permitted to bat and the employer may have no fielders.

In this case the employee was hospitalized for bronchitis and hypertension, as well as treatment for his injured knee. When he later had a physical examination, he was not permitted to return to work. One of the reasons for not being able to do so was that his blood pressure was too high. I am not saying that a temporary total disability award in favor of the employee was not justified under the facts of this case. I maintain, however, that under these facts, the employer certainly had a right to contest

the claim and the assessment of penalties for an unreasonable or vexatious delay in making payments is, in my opinion, clearly contrary to the manifest weight of the evidence.