(No. 55830.—

O'NEAL BROTHERS CONSTRUCTION COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Floyd Barbee, Appellee).

*Opinion filed November 18, 1982.*

Cohn, Lambert & Ryan, Ltd., of Chicago (Michael R. Schneider, of counsel), for appellant.

James C. Serkland, of Scheele, Serkland & Boyle, Ltd., of Chicago, for appellee.

JUSTICE SIMON delivered the opinion of the court:

This is an appeal from an order of the circuit court of Vermilion County confirming an Industrial Commission award of disability benefits, penalties and attorney fees for an accident allegedly suffered by Floyd Barbee while at work on May 10, 1979. We affirm the circuit court as to the award but reverse as to the penalties and attorney fees.

Barbee operated bulldozers, cranes and earth-moving equipment for O'Neal Brothers, a construction company. Prior to 1977 he had had surgery on his right knee and

had an osteoarthritic condition that caused spur formations to form in the lumbar and lower thoracic region of the spine, causing intermittent pain both there and in his knees. He had been working largely free of pain for several years when on January 4, 1977, the bulldozer which he was using to break frost at a construction site settled suddenly, and according to Barbee's testimony he struck his back and both knees against the seat and dashboard of the machinery. He felt something pop and commenced feeling pain in his back. He went home that afternoon complaining of great pain in his neck, back and knees, took pain pills, and visited Dr. Mehdi Adeli eight days later when the pain failed to subside. An operation on his knee in February 1977 relieved most of the symptoms there. Dr. Adeli placed him in a back brace for five months and a cast for two months, and prescribed bed rest and continuous medication for pain. Barbee was off work from the day of the accident until the last week of June 1977, when Dr. Adeli released him for work. He resumed operating bulldozers but felt pain frequently, the pain sometimes being so severe that he needed to hold the side of the bulldozer when dismounting from it.

On November 13, 1978, Barbee felt a sudden severe pain down the middle of his back and in his tailbone and hips while rolling a 200-pound spool onto a crane base. This time he visited Dr. Bipin Bavishi, who diagnosed a pinched nerve in the right lumbar region along with arthritis-related tenderness of the lumbar vertebrae. He placed Barbee in a corset and recommended therapy in the form of hot packs and ultrasound, but discouraged him from returning to work. Barbee left work and visited Dr. Bavishi on an outpatient basis three times between his first visit and February 23, 1979, at each of which visits he reported some continuing pain. At each visit Dr. Bavishi had Barbee perform flexion and leg-raising exercises to determine the extent of the pain, and on February

23 he released Barbee to return to work provided that he limit himself to light duty and wear a brace at all times except while sleeping. Barbee notified O'Neal Brothers of these terms and resumed work on February 26. He was assigned to operate a bulldozer, as before, and a rubber-tired, suspensionless dirt-moving cart known as a turn-a-pull, which was easier to enter and dismount from. He apparently wore his back brace all the time while at work, although this is not clear from the record, and was scheduled to visit Dr. Bavishi approximately once a month.

Barbee continued to experience pain in his back and hips, especially while dismounting from his bulldozer. On May 10, 1979, he was driving a turn-a-pull over a stretch of rough country road when he felt pains in his back, neck, hip and leg which were so severe he had to spend the rest of the day operating an endloader, which did not jolt as much as a turn-a-pull. On the four days immediately prior to this he had operated a turn-a-pull over similarly rough terrain and felt pain as a result of the jolting, but the pain was not as severe as it was on May 10. He took four days off and returned to work on May 15. Barbee visited Dr. Bavishi on that day and again through June, July and August. Dr. Bavishi gave him pills and allowed him to stay on at work, although Barbee felt severe pain off and on and missed two days from work a month during that period on account of the pain. Flexion and leg-raising exercises during this period indicated that his range of movement was less than it had been before May 1979, and Barbee complained that his right leg felt numb around the hip and thigh.

Between August 15 and September 10, 1979, Barbee took considerably more time off, and on September 10, Dr. Bavishi noticed muscle spasms and took him off work altogether. Dr. Bavishi hospitalized Barbee for 10 days in October and performed a myelogram, but the results were negative. Flexion and leg-raising exercises indicated an

increasingly greater range of movement after October, but Barbee continued to feel pain off and on and had not returned to work by January 9, 1980, the day of the hearing before the arbitrator. During this time he received no disability payments from O'Neal Brothers.

Barbee filed three separate claims for disability payments on the theory that three distinct compensable injuries had occurred. At his request, the claims were heard together by the same arbitrator on January 9, 1980. The employer was represented at the combined hearing by three lawyers, as it was insured against workmen's compensation liability by a different insurance carrier at the time of each incident. The evidence adduced at the hearing included medical testimony by Drs. Adeli and Bavishi. Dr. Adeli stated that Barbee's pains prior to the 1977 incident were due to an unusually severe and degenerative case of arthritis, and he diagnosed his condition after that incident as involving a fracture of the T-12 vertebra with spur formations on several vertebrae. On cross-examination he indicated that Barbee's severe arthritis along with his preexisting bone spurs would render him prone to lower back and thoracic defects that might occur spontaneously in the future, but three questions later and again on redirect examination he stated that he could not say for sure that his predisposition to pain was increased by his arthritis and that it was difficult to tell whether he would have encountered the same pain in the absence of his work. Dr. Bavishi also noted the presence of degenerative arthritis and bone spurs but attributed Barbee's 1978 and 1979 complaints to specific events in the nature of a sprain which aggravated his condition rather than to the degenerative nature of the condition itself.

On January 25, 1980, the arbitrator entered three separate awards based on her finding of three distinct injuries arising out of the work. Each of these awards consisted of temporary total disability compensation, and in

each case the arbitrator found no evidence of permanent disability. The award for the 1979 incident included medical expenses and attorney fees and penalties under sections 16, 19(k) and 19(*l*) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, pars. 138.16, 138.19(k), 138.19(*l*)) based on a finding that O'Neal Brothers failed to pay compensation after September 24, 1979, without just cause.

On August 28, 1980, the deposition of Dr. Leo Miller was taken by the carriers which insured O'Neal Brothers. In the deposition Dr. Miller stated, in answer to a hypothetical question, that in his opinion Barbee was suffering from cyclically recurring arthritic phenomena in his spinal column which was not exacerbated by trauma in May 1979. He based this on the degenerative nature of the disease and the fact that Barbee returned to work shortly after the alleged 1979 accident and remained on the job for nearly four months thereafter.

The three claims were heard on a consolidated basis by the Industrial Commission, the only addition to the record being a transcript of Dr. Miller's deposition. The Industrial Commission first announced its decision regarding the 1977 claim, adopting the arbitrator's award and adding to it an award of 90 weeks' permanent partial disability based on a finding that the fracture of claimant's T-12 vertebra was a permanent injury. Three months later the Commission announced its decisions as to the 1978 and 1979 claims. It adopted the arbitrator's decision as to the 1978 claim but added to that award penalties and attorney fees under sections 19(*l*) and 16 of the Workers' Compensation Act. The Commission reversed the award of penalties under section 19(k) of the Act but adopted the arbitrator's award for the 1979 claim in all other respects, including an assessment of penalties of $1,200 under section 19(*l*) and attorney fees of $1,277.55. No appeal was taken by the attorneys handling the 1977 or 1978 claims,

but the 1979 claim was appealed and the award confirmed by the circuit court of Vermilion County. This appeal by the insurance carrier covering the 1979 claim followed.

The employer's first objection to the award is that the finding of a compensable work-related incident in 1979 was against the manifest weight of the evidence. It argues that Barbee's progressive arthritic condition accounted for all of his symptoms in that year, and that no specific giving way of a body part on May 10, 1979, can be pointed to in order to show that his subsequent pain was anything other than a cyclical recurrence of arthritic phenomena that had occurred before and would occur again. The employer points to the opinion of Dr. Miller and the fact that Barbee did not quit work until four months after the alleged accident as supporting this view, and also points out that Barbee himself told Dr. Bavishi on September 10, 1979, that he had been having severe pain in his lower back and tailbone region since April 3, 1979, a month prior to the alleged May injury.

We have held in cases too numerous to mention that a determination by the Industrial Commission should be upheld unless contrary to the manifest weight of the evidence. This court, following the above standard, upholds findings of the Industrial Commission where, as here, there is conflicting medical testimony as to causation (*Sears, Roebuck & Co. v. Industrial Com.* (1980), 79 Ill. 2d 59, 67-68). This is so regardless of whether we would have reached a different determination had we been the fact finder.

In this case Barbee took four days off work immediately following May 10 and made an unscheduled appointment to visit Dr. Bavishi on the fifth day. The record is replete with testimony as to the jarring nature of a turn-a-pull ride, and the Commission could well have concluded, as Dr. Bavishi did, that Barbee's ride on May 10 wrenched his back severely enough to contribute to or accelerate his

subsequent miseries despite the absence of immediate pain strong enough to manifest itself clinically (see *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10) or to force Barbee to take more than four days off in May. We note in this regard that according to Dr. Bavishi's testimony Barbee's range of flexion and extension was more limited than usual on May 15, so there was not, as the employer argues, a complete absence of clinical symptoms at that time.

We do not find fault with the Commission's acceptance of Dr. Bavishi's opinion as to causation instead of Dr. Miller's contrary opinion and Barbee's own contrary testimony as to when his pain began. Dr. Bavishi was Barbee's treating surgeon: he saw Barbee regularly through 1978 and 1979, heard his complaints, tested his symptoms, kept records and made recommendations as to when he could return to work and what kind of work he could perform. His observations were contemporaneous. His medical opinion was certainly not so preposterous as to require the Commission to discard it in favor of the testimony of Barbee, whose recollection of the chronology of his symptoms on September 10 before Dr. Bavishi and at the hearing before the arbitrator was unaided by medical records, or of Dr. Miller, who neither spoke to nor examined Barbee.

The employer suggests next that the Industrial Commission erred as a matter of law in finding a compensable 1979 injury because "an employee is not entitled to compensation *** for the effects of prolonged stress on his body unless he can show an injury traceable to a specific time, place and cause" (*Lambert v. Industrial Com.* (1980), 79 Ill. 2d 243, 247) and Barbee failed to show that a body part gave way on May 10, 1979. This argument takes *Lambert* out of context. In that case the most that claimant showed was that stress on the job over the years contributed to his pain; he could not point to a single inci-

dent that caused or exacerbated it. (See also *International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84.) Here Barbee did show a specific incident that led to pain. A work-related accident that exacerbates a preexisting ailment is a compensable injury. *Brooks v. Industrial Com.* (1979), 78 Ill. 2d 150,155; *Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, 240.

The next question urged for review by the employer is the propriety of the Commission's award of permanent disability benefits relating to the 1977 injury and its denial of such benefits for the 1978 injury. The employer cites *Thomas v. Industrial Com.* (1980), 78 Ill. 2d 327, for the proposition that the arbitrator and the Commission lack the power to enter findings as to permanent disability when the issue is not specifically presented to the arbitrator, and complains that the effect of a finding that no permanent disability resulted from the 1978 injury here was to require the employer's 1979 insurance carrier to answer for whatever continuing work-related disability remained after May 10, 1979, even though some of it may in fact have been traceable to 1978.

In *Thomas* this court noted that the claimant had sought an order advancing his cause for immediate hearing solely on the issue of temporary total disability, and affirmed the decision of the arbitrator and the Industrial Commission not to award permanent disability benefits based on their determination that claimant had not placed the issue of permanent disability before the arbitrator. The circumstances of this case are different. Here the parties did not request an immediate or limited hearing, as they did in *Thomas*, and the record is devoid of any affirmative indication that the parties wished to limit themselves to the issue of temporary total disability. The arbitrator and the Commission proceeded on the assumption that the parties wished to address the subject of permanent injury—a natural assumption in view of the sequen-

tial nature of the injuries alleged by Barbee and the consequent certainty that any work-related disability not attributed to one accident would be attributed to another—and the 1977 insurance carrier against which the Commission awarded permanent disability benefits did not appeal that award. We see no reason why the arbitrator or the Industrial Commission should have assumed that the parties wished to limit the scope of the inquiry to temporary disability; we will not disturb the findings on that account, especially as we have already found them not to be against the manifest weight of the evidence regarding Barbee's disability subsequent to May 10, 1979.

The employer's final argument is that the award of penalties and attorney fees connected with the 1979 injury was improper because its challenge to liability on that injury was based on substantial evidence and therefore could not be characterized as unreasonable or vexatious. We agree with Barbee that a delay in payment of benefits by an employer or insurance company pending an appeal which seeks only to establish that a prior injury attributable to the same employer caused the disability would be unconscionable. (See *Board of Education v. Industrial Com. (Norwood)* (1982), 93 Ill. 2d 20; *Board of Education v. Industrial Com. (Tully)* (1982), 93 Ill. 2d 1; *McKay Plating Co. v. Industrial Com.* (1982), 91 Ill. 2d 198; *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462.) However, we do not agree that this happened in this case, and we reverse the award of penalties and attorney fees relating to the 1979 injury.

The employer argued in its briefs to this court and again in oral argument that Barbee's 1979 symptoms were due to a degenerative arthritic condition rather than to any specific accident suffered on the job. It did not merely point to prior job-related accidents in an attempt to fix responsibility for the 1979 disability on another insurance carrier, but disputed the contention that the work

had anything to do with any disability suffered after May 10, 1979. Although this challenge to liability has failed, "[w]hen the employer acts in reliance upon responsible medical opinion or when there are conflicting medical opinions, penalties are not ordinarily imposed" (*Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297, 302). This rule is necessary to protect the employer's right to appeal an award which he reasonably believes to be contrary to the manifest weight of the evidence; the right to a legitimate appeal would be substantially burdened were penalties to be imposed on all employers who appeal and lose.

In this case the employer could reasonably have believed on the basis of the clear testimony of Dr. Miller, alone or in conjunction with that of Dr. Adeli, that claimant's 1979 symptoms were caused by degenerative arthritis rather than by any injury suffered on the job. This case is similar to *Avon Products* and unlike *Board of Education v. Industrial Com. (Tully)* (1982), 93 Ill. 2d 1, in which three doctors testified in favor of the claimant and none gave testimony favoring the employer. We conclude, as we did in *Avon Products,* that the Industrial Commission's determination that the delay of benefits was unreasonable is against the manifest weight of the evidence.

We do not find fault with the employer's reliance on Dr. Miller's testimony merely because it was adduced after the arbitrator rendered her award, which included penalties and attorney fees. The Workers' Compensation Act does not limit testimony admissible before the Industrial Commission sitting in review of an arbitrator's award to that already adduced before the arbitrator. See Ill. Rev. Stat. 1979, ch. 48, par. 138.16.

We therefore reverse the award of penalties under section 19(*l*) of the Workers' Compensation Act and attorney fees pertaining to the 1979 claim. The award of penalties and attorney fees pertaining to the 1978 claim is affirmed

inasmuch as it was not challenged in this appeal. The awards are otherwise affirmed.

*Affirmed in part and reversed in part.*