(No. 57659.—

CONTINENTAL DISTRIBUTING COMPANY, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Bruce Kazonovitz, Appellant).

*Opinion filed October 21, 1983.*

Reibman & Hoffman, Ltd., of Chicago (George L.

Gaines, of counsel), for appellants.

Kane, Doy & Harrington, Ltd., of Chicago (Gregory E. Ahern, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Petitioner, Bruce Kazonovitz, sought workmen's compensation benefits and penalties from Continental Distributing Company, respondent, for an injury to his left thumb. The arbitrator awarded petitioner his medical expenses, 8³/₇ weeks of temporary total disability compensation, and 23¹/₃ weeks of permanent partial disability compensation. On review, the Industrial Commission agreed with the arbitrator's findings; however, it modified his decision by also awarding penalties of $3,731.47 as additional compensation pursuant to sections 19(k) and 19(*l*) of the Workmen's Compensation Act (Act) (Ill. Rev. Stat. 1979, ch. 48, pars. 138.19(k), 138.19(*l*)) and $746.29 in attorney fees as provided in section 16 of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.16). The circuit court of Cook County confirmed the medical expenses and benefits but reversed the penalty awards. The only issue is the propriety of the penalty awards.

Petitioner worked for respondent as a truck driver delivering cases of liquor. On July 27, 1979, he was handling a case of liquor when it suddenly dropped on his left hand. He promptly notified his supervisor of the accident. The supervisor sent him to a hospital where the hand was X-rayed and his left thumb was placed in a splint. Subsequently, his hand began to swell and turned purple at the thumb.

On the next day, petitioner showed his hand to his supervisor, who then sent him to a company clinic. His left hand was X-rayed, his thumb was again placed in a splint, and he was sent home. Over the next 10 days, he was off work but returned to the clinic on three occasions for physiotherapy and exercise of his left thumb.

On August 6, 1979, the clinic physician, Dr. Harold Herron, examined his thumb and told him to report for work the next day. Petitioner complained his thumb was still painful and he could not bend it. He also informed the physician he had an appointment to see another doctor. Nevertheless, the physician released him for work. He did instruct him, however, to return to the clinic in two days for a follow-up examination.

That afternoon petitioner went to an orthopedic specialist, Dr. Ho Min Lim, who examined and X-rayed his left hand. Dr. Lim placed a hard cast on his hand covering his thumb and palm and extending up his arm half way between the wrist and elbow. Afterward, petitioner returned to respondent's office and told his supervisor and respondent's owner he was willing to work. The owner, however, refused to allow him to work with a cast on his hand. The supervisor suggested to the owner that petitioner see another doctor. The owner responded there was no need for that since he already had the cast on. He then instructed petitioner to go home.

Subsequently, petitioner contacted both respondent and its workmen's compensation carrier concerning temporary disability benefits. Both told him they could not comply with his request for benefits at that time, because there was a discrepancy between the two doctors regarding his treatment. He was paid no compensation.

On August 22, 1979, petitioner filed his application for adjustment of claim which also requested penalties. He then filed a petition seeking an immediate hearing. On September 10, 1979, respondent's workmen's compensation carrier issued a check for $195.25 to petitioner. Four days later his cast was removed and he returned to work on September 24, 1979.

Before the arbitrator, both parties stipulated petitioner's injury arose out of and in the course of his employment and that timely notice was given to the employer.

Only petitioner and Dr. Herron testified at the hearing.

Petitioner described the occurrence of the accident and the treatment he received from the two physicians. He stated his requests for temporary disability benefits were ignored by both respondent and its workmen's compensation carrier. After filing his claim for compensation and penalties, and after waiting 49 days from the date of the accident, he said he finally received a single check for $195.25 but received no other compensation for his injury.

Petitioner then offered into evidence Dr. Herron's records as an admission against interest under *Nollau Nurseries, Inc. v. Industrial Com.* (1965), 32 Ill. 2d 190. These records contained a letter and a report from Dr. Lim detailing his treatment of petitioner. Dr. Lim apparently had sent these documents, along with X rays of petitioner's hand, to Dr. Herron pursuant to Dr. Herron's request to view the X rays. Over respondent's objection, Dr. Lim's documents were allowed into evidence with Dr. Herron's records.

Dr. Herron testified the normal treatment for a thumb fracture is to splint the thumb and have the patient exercise it as soon as possible. He said that such injured employees were often returned to their jobs, even though they complained of pain, because work is considered a form of therapy; and that it was his practice to return employees to work when they had full range of motion of their hand, *i.e.,* when they could make a fist. He stated that on July 28, 1979, he first treated petitioner for his injured thumb and that on August 6, 1979, he found petitioner had full range of motion of his left hand. After reviewing the X rays taken by Dr. Lim, he still opined petitioner was capable of returning to work on August 7.

During cross-examination, he indicated Dr. Lim did not render improper treatment. He said it was a matter

of opinion between doctors whether a fractured member of the hand should be placed in a cast. He admitted a cast is the proper treatment for a stretched ligament. However, he disagreed with Dr. Lim's finding that there was evidence petitioner had stretched a ligament, requiring the cast.

Petitioner did not call Dr. Lim to testify but instead indicated he would rely on his own testimony, Dr. Herron's testimony, the records and exhibits in evidence, and the petitions previously filed. The record is unclear as to the disposition of the case after this initial hearing. However, at a subsequent hearing before the arbitrator in January 1980, both parties agreed to reopen the proofs in the case. Each offered a report of separate examining physicians detailing the history and diagnosis of petitioner's injury. The physician's report submitted by petitioner indicated, in essence, that he sustained a fracture, had his left hand placed in a cast, and suffered some permanent loss of motion in his left thumb. The report of respondent's physician noted petitioner's hand was placed in a cast but stated he sustained no permanent injury. Both parties then rested. On appeal to the Commission, the case was submitted on the record.

The Commission found that respondent, without just and good cause, refused payment of weekly compensation benefits in accordance with the arbitrator's decision for the period of temporary total disability and awarded petitioner the additional sum of $2,500, the statutory maximum, pursuant to section 19(*l*) (Ill. Rev. Stat. 1979, ch. 48, par. 138.19(*l*)). It also found respondent unreasonably vexatiously delayed payment of compensation for the period of temporary total disability and, as provided in section 19(k) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.19(k)), assessed a penalty in the amount of 50% of the compensation award payable during that period. Pursuant to section 16 of the Act (Ill. Rev. Stat. 1979,

ch. 48, par. 138.16), the Commission additionally awarded petitioner attorney fees in the amount of 20% of the compensation awarded under sections 8(b), 19(k) and 19(*l*) (Ill. Rev. Stat. 1979, ch. 48, pars. 138.8(b), 138.19(k), 138.19(*l*)).

The relevant sections of the Act, under which the Commission imposed penalties, provide:

"Sec. 16.

\* \* \*

Whenever the Commission shall find that the employer, his agent, service company or insurance carrier has been guilty of delay or unfairness towards an employee in the adjustment, settlement or payment of benefits due such employee within the purview of the provisions of paragraph (c) of Section 4 of this Act; or has been guilty of unreasonable or vexatious delay, intentional underpayment of compensation benefits, or has engaged in frivolous defenses which do not present a real controversy, within the purview of the provisions of paragraph (k) of Section 19 of this Act, the Commission may assess all or any part of the attorney's fees and costs against such employer and his insurance carrier." Ill. Rev. Stat. 1979, ch. 48, par. 138.16.

"Sec. 19.

\* \* \*

(k) In [any] case where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award. Failure to pay compensation in accordance with the provisions of Section 8, paragraph (b) of this Act, shall be considered unreasonable delay.

\* \* \*

(*l*) In case the employer or his insurance carrier shall without good and just cause fail, neglect, refuse or unrea-

sonably delay the payment of weekly compensation benefits due to an injured employee during the period of temporary total disability the arbitrator or the Commission shall allow to the employee additional compensation in the sum of $10 per day for each day that a weekly compensation payment has been so withheld or refused, provided that such additional compensation shall not exceed the sum of $2,500. A delay in payment of 14 days or more shall create a rebuttable presumption of unreasonable delay." Ill. Rev. Stat. 1979, ch. 48, pars. 138.19(k), 138.19(*l*).

The intent of these sections is "to implement the Act's purpose to expedite the compensation of industrially injured workers and penalize an employer who unreasonably, or in bad faith, delays or withholds compensation due an employee." (*Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297, 301.) Where there is a delay in paying compensation, it is the employer's burden to show it had a reasonable belief the delay was justified. *Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 1, 9.

Respondent maintains its challenge in this case was in good faith, that it acted reasonably and met its burden of justifying the delay in payment of compensation by relying on the testimony and reports of Dr. Herron. It asserts a sanction of payments of additional compensation for failure to pay benefits may not be imposed where, as here, there has been a good faith challenge by the employer to the claim of liability. *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462.

It further argues the Commission erred in allowing into evidence Dr. Lim's letter and report as an admission against interest under *Nollau Nurseries, Inc. v. Industrial Com.* (1965), 32 Ill. 2d 190. It asserts Dr. Lim is petitioner's own physician or agent and, therefore, his documents should not have been admitted as an admission against respondent's interest. On this basis, it contends the only proper medical evidence in the case is that of its own physician, Dr. Herron. It then posits that when an employer

acts in reliance upon reasonable medical opinion or when there are conflicting medical opinions, penalties are not ordinarily imposed. *Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297.

We disagree with respondent's conclusion that Dr. Herron's testimony and report is the only proper medical evidence that should be in the record. Respondent's argument overlooks the fact that, before the arbitrator, it agreed to reopen the proofs and to allow two additional medical reports into evidence. Moreover, neither the Commission nor the circuit court addressed the issue of the admissibility of Dr. Lim's documents. Indeed, at the hearing before the circuit court, the judge stated, "You are only objecting to the penalties?" and respondent replied "Only objecting to the penalties." However, even if Dr. Lim's documents were stricken, we find the Commission had ample evidence, based on the other medical reports and the testimony at the arbitration hearing, from which to conclude penalties were warranted.

In addition, respondent's reliance here on *Avon* and *Brinkmann* is misplaced. In both cases the court found penalties were improper, because the evidence established the employer had reasonable grounds to challenge its *liability* for the claimed injury and did so in good faith. In the instant case, respondent's stipulation before the arbitrator established that it was liable for petitioner's injury. The only question raised was the amount of compensation it was required to pay.

Moreover, the conflicting medical opinions in this case did not dispute liability. Rather, they differed only in regard to the proper treatment which should have been rendered to petitioner for his injury. Respondent's reliance on its own physician's opinion as to the proper treatment to be rendered does not establish, by itself, that its challenge to *liability* was made in good faith. The test is not whether there is some conflict in medical opinion. Rather,

it is whether the employer's conduct in relying on the medical opinion to contest liability is reasonable under all the circumstances presented. This is a factual question for the Commission and will not be disturbed unless it is against the manifest weight of the evidence. *Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 20, 25; *McKay Plating Co. v. Industrial Com.* (1982), 91 Ill. 2d 198, 209.

Section 8(b) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(b)) provides in relevant part:

"If the period of temporary total incapacity for work lasts more than 3 working days, weekly compensation as hereinafter provided shall be paid beginning on the 4th day of such temporary total incapacity and continuing as long as the total temporary incapacity lasts."

Under section 19(k), an employer's failure to pay compensation as provided in section 8(b) is considered unreasonable delay. Moreover, pursuant to section 19(*l*), a delay in payment of 14 days or more creates a rebuttable presumption of unreasonable delay.

Respondent's own physician testified, and respondent never contested that petitioner was temporarily disabled for a 10-day period following his accident. However, rather than paying petitioner weekly compensation beginning on the fourth day of this period, as provided in section 8(b), respondent delayed paying any compensation for 49 days.

Moreover, the arbitrator found petitioner was entitled to $315.38 per week during the period of his temporary total incapacity for work. Accordingly, for the seven days of uncontested liability (from the fourth day of petitioner's disability until he was told to return to work), respondent should have paid petitioner $315.38. Instead, having made only one delayed payment of $195.25, respondent failed and refused to pay the remaining uncontested amount after the arbitrator's decision was filed.

The Act also provides that the employee can secure his own physician at any time at the employer's expense, provided that, "in the event the Commission shall find that a

doctor selected by the employee is rendering improper or inadequate care, the Commission may order the employee to select another doctor \*\*\*." Ill. Rev. Stat. 1979, ch. 48, par. 138.8(a).

Respondent did not proffer evidence showing Dr. Lim rendered inadequate or improper care. Its own physician testified the decision to cast a fractured member of the hand was a matter of opinion between doctors. Moreover, petitioner testified that respondent's owner saw him with the cast on, and, in response to a suggestion petitioner should see another doctor, said it was unnecessary for him to do so. The owner then refused to allow petitioner to return to work and sent him home. However, no compensation was paid to petitioner until after he filed an adjustment of claim and sought penalties. Even after the arbitrator's decision, respondent still refused to pay petitioner the remaining uncontested amount of compensation. In fact, respondent admitted at the circuit court hearing it still had not paid petitioner any of the compensation or medical expenses awarded by the Commission.

Given these circumstances, we cannot say the Commission's determination to impose penalties was against the manifest weight of the evidence.

For the reasons stated, the judgment of the circuit court of Cook County confirming the medical expenses and benefits is affirmed, and that part of the judgment reversing the penalty awards is reversed. The award of the Commission is reinstated.

*Affirmed in part and reversed in part; award reinstated.*