DOLORES MILLER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Bennett Industries, Appellee).

Third District (Industrial Commission Division)   No. 3—92—0825WC

Opinion filed December 28, 1993.—Rehearing denied February 25, 1994.

McCULLOUGH, P.J., dissenting.

Marc A. Perper and Mitchell W. Horwitz, both of Horwitz, Horwitz & Associates, Inc., of Chicago, for appellant.

Michael G. Patrizio, of Dowd & Dowd, Ltd., of Chicago, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Dolores Miller, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*). Therein she alleged injuries to her left knee, arising out of and in the course of her employment with Bennett Industries (the employer). In November 1990, the arbitrator found that claimant was totally and permanently disabled. In December 1990, the employer terminated all compensation benefits, without notice to claimant. On February 4, 1991, the employer filed a petition for review of the arbitrator's decision with the Industrial Commission (Commission). Claimant filed a petition for penalties and attorney fees on April 26, 1991. The Commission entered its decision and opinion on review on August 1, 1991, finding that claimant was totally and permanently disabled. Further, the Commission determined that claimant was not entitled to penalties or attorney fees due to the employer's cessation of compensation benefits. The circuit court confirmed the Commission's decision, and this timely appeal followed.

Claimant raises one issue before this court, namely, the Commission's decision denying penalties and attorney fees under sections 19(k) and 16, respectively, of the Act was contrary to the manifest weight of the evidence.

The following evidence was adduced at the arbitration hearing, held on May 24, 1990. Claimant was a press operator for 14 years prior to her injury. Her job duties involved lifting between 20 and 50 pounds, as well as bending and twisting. Claimant completed seventh grade in 1945. As of the hearing, she read at a fourth-grade level. Her work history consisted of unskilled work in factories and kitchens.

On August 10, 1987, claimant, then age 56, fell at work and twisted her left knee. Dr. Wesley Choy performed an arthroscopic procedure on September 2, 1987. He diagnosed degenerative joint disease, medial compartment of the left knee, chondromalacia of the patellofemoral joint and of the articular surfaces of both the medial femoral condyle and the medial tibial plateau. Dr. Choy prescribed anti-inflammatory medication and a course of physical therapy. He released claimant to return to work on November 17, 1987. Claimant attempted to perform her regular work duties but experienced increased pain in her left knee to the point that she went home crying at night. The employer did not offer her light work.

On December 30, 1987, claimant could not continue working. She came under the care of Dr. Robert Gurtler of the Carle Clinic, who performed a second surgical procedure on her left knee on February 12, 1988. Dr. Gurtler found grade 1-2 chondromalacia of the patella and arthritic changes of the tibial plateau and femoral condyle. He prescribed physical therapy, home exercise, and medication. The range of motion in claimant's left knee was from 20 to 115 degrees during the course of treatment. On August 16, 1989, Dr. Gurtler opined that claimant had osteoarthritis and chondromalacia of the left knee; that he had no further treatment to offer her; and that she must live with her left knee condition.

In April 1989, claimant came under the care of Dr. Stephen Hermes for pain management. He diagnosed depression, fibromyalgia and chronic pain syndrome. Dr. Hermes prescribed anti-inflammatory and anti-depressant medication. Subsequently, he referred claimant to Dr. Maria Sosenko, who found significant atrophy over the quad muscles, tenderness to palpitation of the left knee medially, a flexion contracture of 30 degrees and a range of motion of 30 to 100 degrees. Dr. Sosenko prescribed physical therapy and medication, which were to continue indefinitely. Flexion contracture ultimately improved to 10 degrees. Dr. Sosenko's diagnosis was post-traumatic flexion contracture and post-traumatic osteoarthritis of the left knee. If Drs. Hermes and Sosenko had been called to

testify, they both would have stated that claimant was disabled as of the hearing date.

At the request of claimant's counsel, Dr. Barry Fischer examined claimant on March 3, 1990. His findings relative to the left knee included diminished extension, diminished flexion, and joint space narrowing. If called, Dr. Fischer would have testified that claimant's condition was causally related to the subject injury; that she was currently disabled; and that her condition was permanent.

Respondent hired vocational rehabilitation counselor Larcetta Linear, who interviewed claimant in 1989 and met with her from time to time in the next six months. Ms. Linear did not recommend a job search, job placement, training, schooling or vocational rehabilitation.

As of the hearing, claimant was exercising her knee on a daily basis even though she was unable to straighten it. She walked about 30 minutes per day. Claimant experienced a sharp pain in the left knee cap and on the knee's right side during any activity. Claimant did not crawl or squat and had difficulty descending stairs. She no longer participated in bowling and dancing, two of her favorite pastimes. Claimant slept with a pillow under her left leg and iced her left knee for 20 minutes two or three times a day. Other than the failed attempt to return to work in November and December 1987, claimant had not been released to any form of work at any time by any of her physicians. Claimant stated that her condition had not improved with physical therapy or surgery.

The arbitrator's award of permanent and total disability was entered on November 17, 1990. Without notice, the employer terminated compensation payments in December 1990. On April 26, 1991, claimant filed a motion for penalties and attorney fees pursuant to sections 19(k), 19(l) and 16 of the Act. Ill. Rev. Stat. 1989, ch. 48, pars. 138.19(k), (l), 138.16.

At the June 28, 1991, hearing before the Commission on claimant's petition for penalties and attorney fees, the employer's counsel stated:

"[Claimant] could have returned to work much sooner and did not. That is not our fault. There has not been a vexatious and unreasonable delay in the termination of compensation. If anything, a generous overpayment of said compensation, but once again I will address these issues in much more detail when I file my written responses on Monday."

No such written responses were submitted by the employer to the Commission in regard to this issue.

Moreover, the employer's statement of exceptions to the arbitrator's decision made only the following references to claimant's knee condition.

"With respect to the left knee the exhibits offered into evidence, particularly Dr. Choy's operative report of September 2, 1987, revealed a finding of mild degenerative changes in the left knee; no instability of cartilage was noted. Dr. Choy, in his report dated September 18, 1987, revealed nearly a full range of motion in the left knee. Dr. Smit reported on October 23, 1987 that [claimant] does not suffer from any functional disability and believes that strength in the left knee will return to close to normal on November 16, 1987. Dr. Choy believed that [claimant] could return to work with a 40 pound lifting restriction. By December 1, 1987, Dr. Choy observed that [claimant] was tolerating her work status well and had attained a full range of motion in the left knee."

The employer did not refer to anything occurring in the case after December 1, 1987, despite the extensive treatment of claimant's left knee during 1988 and 1989.

Without explanation, the Commission denied the motion for penalties and fees, and it affirmed the arbitrator's decision as to the nature and extent of claimant's injury.

Before the circuit court, the employer offered into evidence a report allegedly written by Dr. Richard Shermer on November 26, 1990. The report states that Dr. Shermer examined claimant on November 26, 1990. The report concludes that claimant has sufficient stability and function in the left knee and leg to perform her job with the employer. The circuit court found that the Commission's decision regarding penalties and attorney fees was not against the manifest weight of the evidence.

Regarding the sole issue on appeal, claimant makes the following argument. The employer never offered Dr. Shermer's report into evidence before the Commission even though the report is dated November 26, 1990, months prior to the proceedings before the Commission. Before the Commission, the employer's only stated basis for ceasing compensation was a bald, unsubstantiated assertion by counsel that claimant had regained the ability to return to some type of gainful employment well prior to the termination of her compensation benefits. The employer never explained its conduct for terminating compensation until it offered Dr. Shermer's report into evidence at the circuit court proceedings. The employer bore the burden of proving a reasonable basis to justify its nonpay-

ment of compensation benefits, and it did not carry that burden before the Commission.

In response, the employer concedes that Dr. Shermer's report is outside of the record. Yet, the employer maintains that there is ample basis in the record to support its termination of compensation payments. The employer points to Dr. Choy's release of claimant to return to work on November 16, 1987, and to Dr. Smit's October 22, 1987, statement that claimant had no functional disability. The employer also refers to Dr. Gurtler's examinations of 1987, 1988 and 1989, which indicated that he determined no physical findings.

Section 16 of the Act provides, in pertinent part:

"Whenever the Commission shall find that the employer *** has been guilty of unreasonable or vexatious delay, intentional under-payment of compensation benefits, or has engaged in frivolous defenses which do not present a real controversy, within the purview of the provisions of paragraph (k) of Section 19 of this Act, the Commission may assess all or any part of the attorney's fees and costs against such employer ***." Ill. Rev. Stat. 1987, ch. 48, par. 138.16.

Section 19(k) of the Workers' Compensation Act provides, in pertinent part, as follows:

"[W]here there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award. Failure to pay compensation in accordance with [Section 8(b)] of this Act, shall be considered unreasonable delay." Ill. Rev. Stat. 1987, ch. 48, par. 138.19(k).

An award of penalties and the assessment of attorney fees is not proper if an employer's nonpayment is based upon a reasonable and good-faith challenge to liability. (*Avon Products, Inc. v. Industrial Comm'n* (1980), 82 Ill. 2d 297, 304, 412 N.E.2d 486.) If an employer acts in reliance upon qualified medical opinion and disputes whether the employment was related to the alleged disability, such penalties are not ordinarily imposed. (*O'Neal Brothers Construction Co. v. Industrial Comm'n* (1982), 93 Ill. 2d 30, 41, 442 N.E.2d 895.) The test is whether the employer's conduct in relying on the medical opinion to contest liability is reasonable under the circumstances

presented. (*Continental Distributing Co. v. Industrial Comm'n* (1983), 98 Ill. 2d 407, 415-16, 456 N.E.2d 847.) The burden of proof is on the employer. (*Board of Education v. Industrial Comm'n* (1982), 93 Ill. 2d 1, 9, 442 N.E.2d 861.) The Commission's determination of this issue will not be disturbed unless it is against the amount of the manifest of the evidence. *Board of Education v. Industrial Comm'n* (1982), 93 Ill. 2d 20, 25, 442 N.E.2d 883.

The employer did not carry its burden of proving before the Commission the reasonableness of its conduct. It made little effort to do so. It is evident that the employer terminated compensation based upon Dr. Shermer's November 26, 1990, report. Yet this document was never submitted to the Commission. At the hearing of claimant's petition for fees and penalties, the evidence as to why the employer unilaterally terminated compensation in December 1990 consisted of the employer's counsel's assertion that claimant could return to work. Counsel further stated that this argument would be fleshed out in a brief to be submitted shortly thereafter. No such brief appears in the record.

In its statement of exceptions to the arbitrator's decision, the employer made reference only to 1987 evidence, despite the fact that the arbitration hearing was held May 24, 1990. During 1988 and 1989 and early 1990, claimant received ongoing treatment for her condition of ill being. Yet, before the Commission, the employer made no effort to address claimant's ongoing treatment, nor did it endeavor to counter the opinions of Drs. Hermes, Sosenko and Fischer that claimant was totally disabled as of the arbitration hearing.

Moreover, in its brief before this court, the employer refers extensively to Dr. Gurtler's treatment of claimant in 1987 through 1989 and his opinions regarding her condition. Before the Commission, the employer made no reference to Dr. Gurtler. This particular failure to apprise the Commission of evidence which might support its case reflects the lackadaisical manner in which the employer has dealt with this case.

The evidence before the Commission permitted only one conclusion, namely, the employer did not carry its burden of proving the reasonableness of its conduct. Consequently, the Commission's decision regarding penalties and attorney fees is against the manifest weight of the evidence.

Finally, in what amounts to a cross-appeal, the employer argues that the claimant's proper remedy is interest on the judgment, not penalties and fees. The employer cites no authority for this conten-

tion and, thus, we find it waived pursuant to Supreme Court Rule 341(e)(7). 134 Ill. 2d R. 341(e)(7).

For reasons stated above, we reverse the circuit court's judgment and remand this cause of action to the Commission for determination of penalties and attorney fees pursuant to sections 19(k) and 16 of the Act, respectively.

Reversed and remanded.

RAKOWSKI, SLATER, and RARICK, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, dissenting:

The respondent ceased paying compensation after November 1990 and resumed payments subsequent to the Commission decision of August 1, 1991.

Total temporary disability (TTD), as awarded by the arbitrator and affirmed by the Commission, extended to May 10, 1990. Respondent had paid this amount in full. Here, the issue is not the failure to pay TTD but whether the failure to pay the permanent disability award was vexatious, unreasonable delay, or the appeal was frivolous. The respondent began payments immediately after the decision of the Commission of August 1, 1991.

The supreme court stated in *McKay Plating Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 198, 209, 437 N.E.2d 617, 623: "Whether the employer's conduct justifies the imposition of penalties is to be considered in terms of reasonableness and is a factual question for the Commission. Its decision is not to be disturbed unless against the manifest weight of the evidence."

Unless there is a finding that respondent's request for review before the Commission was frivolous, unreasonable, or a vexatious delay, penalties should not be imposed. Respondent began permanency payments immediately after the Commission decision.

The Commission's decision denying penalties was not against the manifest weight of the evidence.