(No. 55225.—

McKAY PLATING COMPANY, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Russell Riley, Appellant).

*Opinion filed June 1, 1982.*

Perz and McGuire, of Chicago (Frank M. Perz and James M. Ridge, of counsel), for appellant.

Klockau, McCarthy, Ellison, Rinden & Hartsock, of Rock Island (Robert L. Ellison, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission on November 20, 1979, awarded petitioner, Russell Riley, workmen's compensation for a period of $23\frac{3}{7}$ weeks of temporary total disability (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(b)) and for 1% permanent partial disability (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(d)(2)) suffered as the result of accidental injuries sustained while in the employ of respondent, McKay Plating Company. Cross reviews were filed and, without taking additional evidence, the Industrial Commission set aside the decision of the arbitrator and awarded petitioner compensation for a period of $26\frac{3}{7}$

weeks of temporary total disability and for 20% permanent partial disability. The Commission also found that respondent, without just and good cause, failed, neglected and refused to pay weekly compensation benefits and awarded petitioner the additional sum of $2,500 as provided in section 19(*l*) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.19(*l*)). The Commission also found an unreasonable and vexatious delay in the payment of compensation during a portion of the period of temporary total disability and, pursuant to section 19(k) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.19(k)), awarded petitioner an additional sum in the amount of 50% of the compensation payable during that period of temporary total disability. Pursuant to section 16 (Ill. Rev. Stat. 1977, ch. 48, par. 138.16) the Commission awarded petitioner attorney fees in the amount of 20% of the compensation awarded under sections 8(b), 19(*l*), and 19(k) of the Act (Ill. Rev. Stat. 1977, ch. 48, pars. 138.8(b), 138.19(*l*), 138.19(k)). Respondent sought *certiorari*, and the circuit court of Rock Island County reversed the decision of the Commission as contrary to the manifest weight of the evidence and reinstated the decision of the arbitrator. Petitioner appealed pursuant to Supreme Court Rule 302(a). 73 Ill. 2d R. 302(a).

At the hearing before the arbitrator it was stipulated that on July 15, 1978, petitioner suffered an accidental injury which arose out of and in the course of his employment. It was also stipulated that at the time of his injury petitioner was 19 years of age and that his average weekly wage was $120. Respondent conceded that petitioner was exposed to chromic fumes but denied any causal connection between that exposure and petitioner's injury.

Petitioner testified that on July 15, 1978, while operating a chrome plating machine, he suffered nosebleeds

and headaches. On July 31, 1978, petitioner was examined by Dr. R. D. Lelonek. Petitioner returned to respondent's the following day and talked with Wilbur McKay, respondent's president. He told Mr. McKay that he had seen Dr. Lelonek and gave him a bill he had received from the doctor. Mr. McKay told petitioner that he could not have him working for the company any longer and his employment was terminated. Petitioner returned to Dr. Lelonek, and on January 16, 1979, Dr. Lelonek performed surgery to repair a nasal septal perforation. After the surgery petitioner returned to Dr. Lelonek every other week until February 6, 1979, at which time he was released to return to work. Petitioner testified that since July of 1978 it had been hard for him to breathe through his nose, especially when playing sports, and that he still had headaches. On cross-examination petitioner testified that he worked continuously for respondent from March of 1978 until August of 1978 and that his only exposure to chromic fumes occurred during this period of time. Petitioner testified that on February 2, 1979, he started working for Midwest Pop Shoppe as a filler operator at an average weekly wage of $170. He had been working continuously since February 2, 1979, and had not lost any time from work as a result of any problems with his nose. Petitioner also testified that after he was terminated by respondent he collected unemployment compensation until he went to work on February 2, 1979, and that at the time he applied for unemployment compensation, and until the time of his surgery, he represented himself to be physically able to work.

Wilbur McKay testified that on or about August 1, 1978, he had a conversation with petitioner at respondent's plant at which time petitioner stated that he wanted to come back to work. Mr. McKay told petitioner that respondent was "low on work" and that there was no work

for him. McKay stated that one other employee had been terminated a week or two before this conversation with petitioner, and within the next month approximately five more employees were terminated because of lack of work. Between August of 1978 and January of 1979 none of those employees were replaced.

By agreement of the parties the reports of three physicians were admitted into evidence. A letter written by Dr. Lelonek, the treating physician, dated February 26, 1979, stated that at the time of petitioner's first visit on July 31, 1978, he was found to have a nasal septal perforation. Surgical repair of this perforation was performed in January of 1979. Petitioner had an uncomplicated postoperative course, and when last seen in the doctor's office on February 6, 1979, the perforation was "practically completely healed." Dr. Lelonek stated, "Thus, I expect that he [petitioner] will have practically no difficulty in the future with recurrence of nasal crusting or nasal obstruction. I believe that the perforation was probably due to exposure to chemicals involved in the chrome plating industry." According to a letter written by Dr. Albert Zimmer, respondent's examining physician, dated May 7, 1979, "the nasal septum was dry, with some scarring present, and had slight irregularity. The mouth, and throat was unremarkable. I feel that this man [petitioner] has had good repair of the septal perforation. The septum is healed at this time, but in view of the fact that there is no cartilage in it, there is still a chance of septal perforation recurring. He may also have some persistent dryness of the nose, due to some damage of the mucous glands on the turbinates, which would go along with exposure to chromate, and other fumes. After reviewing the pictures, and with the amount of time that Mr. Riley was exposed to the fumes, I feel that it is most probable the septal perforation was caused by exposure to the fumes. I see

no evidence of any other contributing cause to his problems. I would feel that he is able to work at any reasonable occupation, where he will not be exposed to noxious fumes, such as he may be around welding, or around other chemicals." At the request of his attorney, petitioner was also examined by Dr. E. R. Levine. In his report, dated July 6, 1979, Dr. Levine stated that "there is a noticeable area in the nasal septum where the surgery was done." No opinion was expressed by Dr. Levine regarding permanent disability.

Petitioner contends that the factual determination of the Industrial Commission as to the nature and extent of the injury which petitioner sustained is not against the manifest weight of the evidence and should not have been reversed by the circuit court. Petitioner argues that it is clear from Dr. Zimmer's report that because of the danger of recurrence of the septal perforation petitioner cannot engage in any occupation where he would be exposed to noxious fumes. He points out that petitioner is, by occupation, a laborer, and argues that "these restrictions substantially reduce his potential in the open job market." Respondent submits that petitioner has the burden of proving the elements of his claim, and contends that the Commission's finding of 20% permanent partial disability is totally without foundation in the record. While no longer contesting causal connection between the exposure and the perforated nasal septum, respondent asserts that there is no medical testimony linking petitioner's headaches to the exposure and argues that there is no basis in the record for inferring that the headaches resulted from the chromic fume exposure. Respondent contends that petitioner's "only residuum is a lack of cartilage in the nose and a susceptibility to further perforation upon additional chromic fume exposure" and argues that "to find that this minimum residuum *** has resulted in one-fifth per-

manent impairment of the body as a whole is absurd" and against the manifest weight of the evidence.

The determination of the extent of petitioner's injury is the function of the Commission, whose finding will not be disturbed unless it is against the manifest weight of the evidence. (*Zarley v. Industrial Com.* (1981), 84 Ill. 2d 380; *Bishop v. Industrial Com.* (1980), 78 Ill. 2d 315.) The award for permanent partial disability was made pursuant to section 8(d)(2), which in pertinent part provides:

> "If, as a result of the accident, the employee sustains serious and permanent injuries *** which *** do not incapacitate him from pursuing the duties of his employment but which would disable him from pursuing other suitable occupations, or which have otherwise resulted in physical impairment; or if such injuries partially incapacitate him from pursuing the duties of his usual and customary line of employment but do not result in an impairment of earning capacity, *** then in any of the foregoing events, he shall receive *** compensation at the rate provided in subparagraph 2 of paragraph (b) of this section for that percentage of 500 weeks that the partial disability resulting from the injuries covered by this paragraph bears to total disability." (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(d)(2).)

Dr. Zimmer's report shows that petitioner is suffering from a disability in that he is unduly sensitive to noxious fumes, a condition precipitated by his on-the-job exposure to chromic fumes and one which is apparently permanent. Section 8(d)(2) does not require that the accident result in impairment of earning capacity, only that the injury partially incapacitate an employee from pursuing the duties of his usual and customary line of employment. On this record we cannot say that the finding that petitioner has suffered permanent partial disability to the extent of 20% is contrary to the manifest weight of the evidence.

Petitioner next contends that the decision of the circuit court reversing the Commission's imposition of penal-

ties and attorney fees under sections 19(k), 19(*l*), and 16 is contrary to law. In its order the Commission found:

> "7. That the Respondent did without just and good cause, fail, neglect and refuse payment of weekly compensation benefits for the period from 5/7/79 to 3/25/80, and said Petitioner is now entitled to have and receive from said Respondent the further sum of $2,500.00, the statutory maximum, as provided in paragraph (*l*) of Section 19 of said Act, as amended.
>
> 8. That there has been an unreasonable and vexatious delay by the Respondent herein in the payment of compensation for the period from 1/6/79 to 2/6/79 of temporary total incapacity for work; that said Petitioner is now entitled to additional compensation in the amount of 50% of the amount of Compensation payable during said period of temporary total incapacity as provided in paragraph (k) of Section 19 of said Act, as amended; and that Petitioner's attorney's fees is the amount of 20% of compensation awarded under Sections 8(b), 19(*l*) and 19(k) of said Act, as amended are assessed against Respondent, as provided in Section 16 of said Act, as amended."

In support of his contention that respondent's failure to pay compensation was not based on the good-faith belief that petitioner was not entitled to compensation, petitioner asserts that respondent admitted at the time of arbitration, and in the circuit court, that petitioner was temporarily totally disabled from January 16, 1979, to February 6, 1979, the period from the date of the surgery to the date of his release to return to work. Petitioner argues that the sanction imposed under section 19(*l*), which covers the period from May 7, 1979, the date of Dr. Zimmer's report, to March 25, 1980, the date of the hearing on review before the Commission, cannot be reasonably challenged because respondent's own expert, Dr. Zimmer, stated that there was a causal connection between petitioner's exposure to fumes and his nasal perforation, and therefore the failure to make payment throughout this

period is inexcusable. Petitioner contends, too, that the penalty assessed under section 19(k) is based only on the period of time during which respondent has conceded petitioner was entitled to temporary total disability and cannot be seriously questioned. He notes that the decision of the Commission states that this period of time began on January 6, 1979, rather than January 16, 1979, as shown by the record. Petitioner attributes the discrepancy to a scrivener's error and suggests that the correct period of time for which the sanction is imposed should be from January 16, 1979, to February 6, 1979. Citing *City of Chicago v. Industrial Com.* (1976), 63 Ill. 2d 99, petitioner submits that it is respondent's burden to excuse the delay of payment and argues that, in light of respondent's admissions and failure to pay, it cannot be said that the imposition of sanctions is against the manifest weight of the evidence.

Respondent contends that not only are the penalties inappropriate under the circumstances shown by the record, but that the Commission was without authority to impose them. The sections of the Workmen's Compensation Act, pursuant to which the penalties were imposed, provide:

"Sec. 16.

***

Whenever the Commission shall find that the employer, his agent, service company or insurance carrier has been guilty of delay or unfairness towards an employee in the adjustment, settlement or payment of benefits due such employee within the purview of the provisions of paragraph (c) of Section 4 of this Act [Ill. Rev. Stat. 1977, ch. 48, par. 138.4]; or has been guilty of unreasonable or vexatious delay, intentional underpayment of compensation benefits, or has engaged in frivolous defenses which do not present a real controversy, within the purview of the provisions of paragraph (k) of Section 19 of this Act [Ill. Rev. Stat. 1977, ch. 48, par. 138.19(k)], the Commission may as-

sess all or any part of the attorney's fees and costs against such employer and his insurance carrier." Ill. Rev. Stat. 1977, ch. 48, par. 138.16.

"Sec. 19.

\* \* \*

(k) In case where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award. Failure to pay compensation in accordance with the provisions of Section 8, paragraph (b) of this Act [Ill. Rev. Stat. 1977, ch. 48, par. 138.8(b)], shall be considered unreasonable delay.

(*l*) In case the employer or his insurance carrier shall without good and just cause fail, neglect, refuse or unreasonably delay the payment of weekly compensation benefits due to an injured employee during the period of temporary total disability the arbitrator or the Commission shall allow to the employee additional compensation in the sum of $10 per day for each day that a weekly compensation payment has been so withheld or refused, provided that such additional compensation shall not exceed the sum of $2,500. A delay in payment of 14 days or more shall create a rebuttable presumption of unreasonable delay." Ill. Rev. Stat. 1977, ch. 48, pars. 138.19(k), (*l*).

Citing *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462, respondent argues that the Commission was without authority to impose penalties for the reason that when petitioner, for the first time on December 19, 1978, demanded penalties, there was no adjudication of liability. The authority relied upon does not support this argument. The penalty assessed under section 19(*l*) resulted from the failure to pay temporary total compensation for which an award had been entered in favor of petitioner. The penalty assessed under section 19(k) applies only to the com-

pensation awarded for the three additional weeks of temporary total compensation found by the Commission to be due for the period following petitioner's surgery. *Brinkmann* requires only that there be an award, not that it be in the amount which the Commission ultimately finds to be due.

Respondent also contends that the assessment of penalties was contrary to the manifest weight of the evidence. Respondent points out that it contested liability at the arbitration hearing, and argues that the penalty imposed under section 19(*l*), for the period from May 7, 1979, to March 25, 1980, is not supported by the evidence. In support of this contention respondent notes that petitioner's testimony shows that he was employed by Midwest Pop Shoppe from February 2, 1979, until the time of the hearing before the arbitrator. It points out, too, that prior to the surgery petitioner represented to the unemployment compensation agency that he was willing and able to work.

Compensation for temporary total disability is to be awarded for the period between the date of the injury and the date when the employee's condition has stabilized so far as the permanent character of the injury will permit. (*Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462; *Howard v. Industrial Com.* (1980), 81 Ill. 2d 50.) The question whether the petitioner was temporarily totally disabled and for what period of time was a question of fact for the Industrial Commission. Whether the employer's conduct justifies the imposition of penalties is to be considered in terms of reasonableness and is a factual question for the Commission. Its decision is not to be disturbed unless against the manifest weight of the evidence. (*Keystone Steel & Wire Co. v. Industrial Com.* (1981), 85 Ill. 2d 178; *Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297; *Wilbon v. Industrial Com.* (1976), 65 Ill. 2d

221.) The record shows that on May 7, 1979, respondent was advised by its examining physician that petitioner's condition was caused by the chromic fumes. On March 25, 1980, at the hearing on review, respondent, although it had not paid any portion of the compensation awarded, offered no evidence in support of its contention that petitioner was not entitled to temporary total compensation. On this record we cannot say that the findings of the Commission, either as to the period of time petitioner was temporarily totally disabled, or that respondent's delay in payment was unreasonable and without good cause, are against the manifest weight of the evidence.

For the reasons stated, we reverse the judgment of the circuit court and confirm the decision of the Industrial Commission.

*Judgment reversed;*
*award reinstated.*