(No. 54716.—

THE BOARD OF EDUCATION OF THE CITY OF CHI-
CAGO, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (John F. Tully, Appellee).

*Opinion filed November 18, 1982.*

2

RYAN, C.J., and UNDERWOOD and MORAN, JJ., dissenting.

Michael J. Murray and Patricia J. Whitten, of Chicago (Reginald D. Taylor, of counsel), for appellant.

J. Michael Madda, of Chicago (Mark Matranga and Charles Wolff, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

This is an appeal from a decision of the circuit court of Cook County that confirmed an Industrial Commission determination that claimant, John F. Tully, was entitled to temporary total disability and permanent partial disability payments and additional payments as penalties for delay from his employer, the Chicago board of education (the board), and reversed an award of attorney fees. In the circuit court, the board contested the length of Tully's temporary total disability as well as the imposition of penalties and attorney fees. Before this court the board concedes liability for the disability payments in the amounts determined by the Commission, but challenges the penalties awarded under sections 19(k) and 19(*l*) of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, pars. 138.19(k), (*l*)). Tully seeks on cross-appeal to reinstate the award of attorney fees.

John Tully was employed by the board as a truck driver, his duties being to deliver equipment to various city schools and to load and unload the equipment from his truck. He had worked for the board for 13 years

when on January 26, 1977, he fell while at work and struck his back on the floor. Sharp pain in the area of his tailbone prevented him from standing upright, and he was taken by ambulance to Holy Cross Hospital, where the emergency room records diagnosed his condition as a right sacroiliac joint sprain and possible ruptured disc. Tully underwent medical treatment and did not return to work until September 1977. His first doctor, Dr. Francis Mazeika, treated him until March 1977, but referred him to Dr. Arthur Rodriquez in that month when the pain did not abate. Dr. Rodriquez treated him with hot packs until his release from the hospital in September 1977, at which time he was advised to continue applying the hot packs at home and to wear a brace.

Tully returned to work on September 5, 1977, and worked for another 16 months, missing a few days sporadically because of pain. Although back at work through the latter half of 1978, Tully continued to experience back pains and returned periodically to Dr. Rodriquez for X rays and treatment. In January 1979 he noticed that his back pain was becoming worse and was spreading into his legs. He missed 12 to 14 days from work, and stopped working altogether on January 22, 1979. Dr. Rodriquez continued to treat him through June 1979, at which time he advised Tully that he could return to work. Tully did return, but not until August 3, 1979.

In the meanwhile, an Industrial Commission arbitrator decided in Tully's favor on a claim he had filed against the board in February 1977. The arbitrator's decision, entered May 22, 1978, awarded Tully 32²/₇ weeks' temporary total disability payments at a weekly rate of $218.77 and 100 weeks' permanent partial disability payments on the basis of 20% loss of bodily function. The board had already paid Tully 14³/₇ weeks' temporary total disability compensation by the time the arbitrator's

decision was rendered. Rather than pay the rest of the award, it sought review of the arbitrator's findings, contesting both the nature and extent of the permanent partial disability and the length of the temporary total disability.

The Industrial Commission held review hearings in November 1978 and June 1979. Tully testified on his own behalf at both hearings, and the medical records of each of the doctors who had treated him were introduced into evidence. Dr. Rodriquez' diagnosis, contained in a report dated June 12, 1979, was that Tully's continuing disability was due to a herniated disc caused by his 1977 fall and to osteoarthritis which preexisted the fall but was exacerbated by it. Doctors Robert Busch and Hyman Hirshfield, whom Tully had also consulted, gave an independent diagnosis dated November 7, 1978, which agreed with that of Dr. Rodriquez. The May 1979 report of Dr. James Milgram, who examined Tully at the board's request, also attributed Tully's symptoms to a chronic lower back problem exacerbated by his fall and did not discredit Tully's suggestion that he continued to require treatment, although it noted that Tully seemed to be progressing unusually slowly under Dr. Rodriquez and ventured the opinion that "the patient was procrastinating" and should have a myelogram. Some compensation for this period was paid in June, although the record is unclear as to how much.

On the basis of Tully's testimony and the medical reports, the Industrial Commission issued an order on July 17, 1980, modifying the award of the arbitrator. The new order raised the temporary total disability award to $52\frac{2}{7}$ weeks but reduced the permanent partial disability award to 60 weeks on the basis of 12% loss of bodily function. It also imposed on the board a penalty of $2,500 for unreasonable delay in payment of the temporary total disability benefits pursuant to section 19(l), a

50%-of-amount-due penalty for vexatious and unreasonable delay in payment of temporary total disability benefits between January 23, 1979, and June 12, 1979, pursuant to section 19(k), and a charge for attorney fees in the amount of $1,812.62 pursuant to section 16 of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.16).

Tully's position is that the circuit court properly affirmed the award of penalties under sections 19(k) and (*l*) because the board's liability for his temporary total disability for the periods assessed was clear, the board's challenge to the liability was not in good faith, and its delay of payment of the benefits during the period of litigation was thus unreasonable, vexatious, and without good cause. The board takes the position that inasmuch as it won a modification of the arbitrator's award, its challenge before the Industrial Commission was in good faith. It also points out that the Commission based its award of penalties solely on nonpayment of benefits over the period between January and June 1979, a period for which no adjudication of liability had yet been made, and asserts that penalties should not be imposed where there is no adjudication of liability and grounds for reasonable doubt as to whether the employer would in fact be held liable for compensation exist.

The board's first objection appears convincing at first glance but lacks merit on closer inspection. The fact that the Industrial Commission modified the arbitrator's award would indicate that the board's challenge to the part of the award that was modified in the board's favor was in good faith and would excuse the nonpayment of that part of it. However, the modification in the board's favor in this case, a reduction of 40 weeks, was only with respect to the permanent partial disability award. The award for temporary total disability, on which the penalties for nonpayment were based, was *increased* by 20 weeks to cover the weeks between January and June

1979, which occurred after the arbitrator's award was made. The weekly payment the board was supposed to have made to Tully was left unchanged; it was $218.77 both before and after the Industrial Commission modified the award, and the entire temporary total disability award made by the arbitrator was left standing. The board should have made the payments; there is nothing in the fact that a permanent partial disability award was modified in its favor that would indicate good faith in challenging the temporary total disability claim for 1979.

The question of whether the board was guilty of *bad* faith, so as to bring it under sections 19(k), 19(*l*) and 16 of the Workmen's Compensation Act, must be resolved by referring to the other evidence in the record. The penalty sections of the Act provide as follows:

"Sec. 16. ***

* * *

Whenever the Commission shall find that the employer, his agent, service company or insurance carrier has been guilty of delay or unfairness towards an employee in the adjustment, settlement or payment of benefits due such employee within the purview of the provisions of paragraph (c) of Section 4 of this Act; or has been guilty of unreasonable or vexatious delay, intentional underpayment of compensation benefits, or has engaged in frivolous defenses which do not present a real controversy, within the purview of the provisions of paragraph (k) of Section 19 of this Act, the Commission may assess all or any part of the attorney's fees and costs against such employer and his insurance carrier." Ill. Rev. Stat. 1977, ch. 48, par. 138.16.

"Sec. 19 ***

* * *

(k) In case where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award

compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award. Failure to pay compensation in accordance with the provisions of Section 8, paragraph (b) of this Act, shall be considered unreasonable delay." Ill. Rev. Stat. 1977, ch. 48, par. 138.19(k).

"Sec. 19 ***

* * *

(*l*) In case the employer or his insurance carrier shall without good and just cause fail, neglect, refuse or unreasonably delay the payment of weekly compensation benefits due to an injured employee during the period of temporary total disability the arbitrator or the Commission shall allow to the employee additional compensation in the sum of $10 per day for each day that a weekly compensation payment has been so withheld or refused, provided that such additional compensation shall not exceed the sum of $2,500. A delay in payment of 14 days or more shall create a rebuttable presumption of unreasonable delay." Ill. Rev. Stat. 1977, ch. 48, par. 138.19(*l*).

These sections are intended to prevent bad faith and unreasonable withholding of compensation benefits from injured workers. At the same time, since obviously many claims and awards can be challenged in the legitimate hope that the reviewing tribunal will view the evidence in a way favorable enough to the employer to reduce or rule out his liability, Illinois courts have refused to assess penalties under these sections where the evidence indicates that the employer reasonably could have believed that the employee was not entitled to the withheld compensation (*Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297, 301; see also *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462). Where a delay has occurred in payment of workmen's compensation benefits, the employer bears the burden of justifying the delay (*City of Chicago v. Industrial Com.* (1976), 63 Ill. 2d 99, 104), and the standard we hold him to is one of objective reasonableness in his belief. Thus it is not good enough to merely assert honest belief that the employee's claim is invalid or that his award is not sup-

ported by the evidence; the employer's belief is "honest" only if the facts which a reasonable person in the employer's position would have would justify it. In the *Avon Products* case, for example, an Industrial Commission award of penalties was overturned as contrary to the manifest weight of the evidence because none of the medical records available to the employer mentioned anything related to the employee's work as a possible cause of her disability, even though the employer was aware of the details of her claim.

In this case the evidence that the board had or should reasonably have had in its possession would have disclosed that the grounds for challenging temporary total disability liability for the period January 1979 to June 1979 were insubstantial at best. Tully was off work for that period and saw several doctors, all of whose reports indicate a belief that the 1979 ailment was a relapse of the effects of the 1977 work-related injury. The board knew that Tully was unable to work in 1977 and 1978 due to an injury he suffered on the job—in fact, the board was awaiting Industrial Commission review of the claims that arose out of that period of disability when Tully failed to report to work in 1979—and his 1979 absence, especially when considered alongside the fact that his absences in 1978 had been sporadic, should have alerted the board to the possibility that his condition had not stabilized. It is true that Tully, in taking his leave in January 1979, requested "vacation pay," but it is not true that only healthy people go on vacations; it is quite possible, or even likely, that people who go on "vacation" shortly after apparently recovering from a lingering ailment will consult a doctor while on vacation, as Tully did. If the board had any real doubts as to whether this new absence was related to the 1977 injury, it should have tried to clarify those doubts by asking Tully's doctor what his diagnosis was, or by having its own doctor examine Tully. Its failure to do so does not entitle the board to

assert later that it acted in good faith because it was ignorant of the strongest evidence in favor of Tully and, without this evidence, its challenge to liability might well have succeeded.

Finally, the fact that its own doctor, Dr. Milgram, raised the possibility in his report that Tully was delaying effective treatment does not provide a foundation of good faith for the board's denial of liability for the 1979 absence and refusal to pay benefits during that period. This report does not deny that the absence was initially due to a relapse of Tully's 1977 symptoms. In addition, the report was not rendered until May 1979 and thus, even if it had denied any causal link with the earlier injury, would not have furnished a reason for the board's decision to pay no benefits at all for the months from January through April. The board's failure to follow up on the suggestion made by Dr. Milgram that a second opinion as to further treatment be obtained from Tully's orthopedic surgeon might indicate that it was more interested in being rid of Tully than in curing him or paying him what was due. This lack of concern does not support a claim of good faith; if anything, it is evidence of bad faith.

We therefore find no reason for disturbing on appeal the Industrial Commission's determination that the board's failure to pay benefits for the period January to June 1979 was not in good faith. We can only reverse such a determination if it is contrary to the manifest weight of the evidence (*Keystone Steel & Wire Co. v. Industrial Com.* (1981), 85 Ill. 2d 178, 186) or based on the wrong legal standards, and we cannot say either is the case here.

The board next argues that even if it is guilty of bad faith and vexatious delay for the January to June 1979 period, an award of penalties for that period is inappropriate because there was no declaration of liability for compensation for those months before the penalties were assessed. It argues that it is unduly harsh to require

employers to pay benefits before there is an adjudication of liability, as the employer does not know in advance how much he will be liable for even in those cases where he can reasonably predict that he will be held liable for some compensation, and cites *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462, for the proposition that penalties under section 19(k) and attorney fees under section 16 must be based on an existing award of benefits, the payment of which is delayed.

This is too narrow a reading of the statutory sections involved, and too broad a reading of *Brinkmann*. Section 19(k) provides for penalties of 50% of compensation due in cases where the employer engages in "unreasonable delay." It then goes on to state that, at least in the absence of a good-faith challenge to the underlying liability, "[f]ailure to pay compensation in accordance with the provisions of Section 8, paragraph (b) of this Act, shall be considered unreasonable delay." (Ill. Rev. Stat. 1977, ch. 48, par. 138.19(k).) The guiding purpose of the Act is to provide an income stream to an injured worker, who is typically left without one (*Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297, 304), and thereby prevent such occurrences as eviction for nonpayment of rent, which not having a weekly income may occasion.

Even if the *Brinkmann* case can be regarded as consistent with this intent, it still does not preclude the award of penalties and attorney fees in this case. In *McKay Plating Co. v. Industrial Com.* (1982), 91 Ill. 2d 198, 208-09, we viewed an arbitrator's award as satisfying the brief statements in *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462, 469, that penalties under section 19(k) and awards of attorney fees under section 16 are applicable only after an award has been entered in favor of the claimant. The employee in *McKay* was actually disabled and undergoing surgery for much of the time between the entry of the arbitrator's award and the period for which penalties were

sought. In the instant case, there was a period of apparent recovery following the arbitrator's award, followed by a relapse. Perhaps in some situations the existence of an arbitrator's award covering an earlier period may not support imposition of penalties for a later period even though the later disability is found to be traceable to the original work-related injury, as where there is a relapse after a long period of apparent recovery or after the employer is informed that the claimant has received a clean bill of health. Here, however, nothing could have formed the basis for a reasonable belief that the claimant's condition had stabilized. Tully took days off sporadically due to pain during his "recovery" and was undergoing treatment throughout this period. This should have alerted the board to the possibility that there was a continuing disability which was capable of flaring up again, particularly in view of the fact that all of the doctors involved up to the time for which penalties were sought treated him as if for a continuing ailment. We believe it wholly consistent with *Brinkmann,* as that case was applied in *McKay,* to view the arbitrator's award entered on May 22, 1978, and the employer's failure to comply with it as justification for the penalties imposed under section 19(k), as well as the award of attorney fees under section 16.

It is true that section 16 is phrased only in general terms of "unfairness," "frivolous defenses," and "unreasonable or vexatious delay," and does not refer to an affirmative set of standards as the last sentence of section 19(k) does. However, when the employer's refusal to pay benefits is founded on a challenge to liability that is not in good faith, allowing him freedom from an award of attorney fees might encourage him to delay matters indefinitely in the Industrial Commission and the courts until the claimant decides it would be easier to settle for a small part of what is legally his due than to spend the time and money that would be required to stick it out to the end.

The overriding purpose of the Act, especially as expressed through its penalty sections, is to compensate claimants as early and as thoroughly as possible for income lost due to job-related injuries. (*Board of Education v. Industrial Com.* (1972), 53 Ill. 2d 167, 171.) It hardly comports with that intent either to permit employers to litigate *ad infinitum*, or to force claimants who finally win an Industrial Commission award to institute a new proceeding for attorney fees on the ground that it was only with his victory that a basis for assessing penalties materialized. The Commission's award under section 16 was proper and should not have been reversed by the circuit court. We direct its reinstatement.

Finally, for the reasons mentioned above, imposition of the daily $10 penalty assessed under section 19(*l*) for unreasonably withholding the weekly payments to which Tully was entitled is affirmed for the period indicated in the Industrial Commission's order. This penalty is designed to exact a price for each day of delay, the purpose being to encourage prompt payment of compensation. To require an adjudication before imposing penalties under section 19(*l*) would defeat the purpose of that section.

The judgment of the circuit court is affirmed insofar as it confirmed the award of the Industrial Commission and reversed insofar as it set aside the award of attorney fees. The award of the Commission is reinstated.

*Affirmed in part and reversed in part; award reinstated.*

CHIEF JUSTICE RYAN, dissenting:

The provisions of section 19(k), section 19(*l*), and section 16 of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, pars. 138.19(k), 138.19(*l*), 138.16) appear to be overlapping and confusing, and are in need of clarification by the General Assembly. Although section 19(*l*) relates solely to penalties for failure to pay compensation benefits during temporary total disability, I note that in section 19(k) there

is also included as a basis for penalties failure to pay compensation in accordance with the provisions of section 8(b) (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(b)). Section 8(b) provides for the payment of compensation during temporary total incapacity. In the case before us it appears the penalties under both section 19(k) and section 19($l$) were assessed for the same alleged default of the board of education, failure to pay compensation for temporary total disability between January 23, 1979 and June 12, 1979.

It may be that the Industrial Commission has devised a rule of thumb as a guide in determining when penalties may be assessed under section 19(k), and when they may be assessed under section 19($l$). Such a rule would have to be purely an arbitratory creation of the Industrial Commission because the proper applicability of the sections is not readily apparent.

The basis for my dissent, however, is not this apparent overlapping of penalties. I dissent because the assessment of penalties in this case is contrary to the manifest weight of the evidence. It is well established that an employer who delays payment bears the burden of excusing the delay. (*City of Chicago v. Industrial Com.* (1976), 63 Ill. 2d 99.) However, this rule must not be applied so rigidly that an employer may seek review of an award against him only at his peril. Also, the mere fact that an employer does not prevail, or only partially prevails, as in this case, does not conclusively establish that he has not shown that the delay was justified.

The majority opinion notes that the board sought review before the Industrial Commission of the arbitrator's award of 32²/₇ weeks of temporary total disability compensation and 20% loss of bodily function. The majority holds, however, that the fact that the board prevailed on review by securing a reduction of the percentage of permanent partial disability did not excuse it from making the temporary total disability payments, nor did it indicate good faith

in challenging the temporary total disability award. The majority cites no cases wherein an employer has been penalized in this manner. To the contrary, this court has stated:

"The dispute over the form of the payments in the instant case was legitimate. Although it involved only a portion of the award, the respondent was entitled to withhold payments under these facts until this issue was resolved." (*Mid-American Lines, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 47, 62.)

In *Mid-American Lines, Inc.* and *City of Chicago v. Industrial Com.* (1976), 63 Ill. 2d 99, it was conceded that a part of an award was payable and the entire amount was withheld until the disputed amount was resolved. This court held that an award of penalties under such facts was contrary to the manifest weight of the evidence.

The facts in the instant case more clearly favor the employer than they did in the two cases last cited. Here, the acknowledged amount of temporary total disability payments due to the employee (14$\frac{3}{7}$ weeks) had been paid to the employee. Only the difference between that amount and the 32$\frac{2}{7}$ weeks awarded by the arbitrator was withheld. On review before the Industrial Commission, both this difference in temporary total disability award, and the 20% permanent disability award were contested. That the board's contesting of the award of temporary total disability was not frivolous is shown by several bits of evidence in the record. As the majority opinion notes, following the employee's injury, he was taken to Holy Cross Hospital, where his condition was diagnosed as a right sacroiliac joint sprain, and possible ruptured disc. Before the hearing in arbitration nothing further was shown to indicate that his injury was other than a sprain. Following his injury, the employee visited his family physician about every two weeks, who treated him for pain and later referred him to Dr. Arthur Rodriguez about April 12, 1977. Dr. Rodriguez' report before the arbitrator revealed that the employee

had told him on May 17, 1977, "that he felt better but that the pain had not completely gone," and that he had not returned to work because he was afraid the pain would recur. That date, May 17, 1977, roughly corresponds to 14³/₇ weeks after the accident on January 26, 1977, the period of time for which the board had made temporary total disability payments. On October 24, 1977, the employee was examined by Dr. Leo F. Miller, who reported that the X rays were essentially negative, and in his opinion, based on the objective findings, the subjective complaints were not substantiated. This evidence clearly shows the board's appeal of the arbitration award for temporary total disability was not frivolous.

The award of penalties, however, was not based on the failure to pay the temporary total disability awarded by the arbitrator. The penalties were awarded solely for the nonpayment of temporary total disability from January 23, 1979, to June 12, 1979. It should be remembered that the employee had returned to work on September 12, 1977. He was working full time when the arbitrator entered its award on May 22, 1979. He was also working full time when the first hearing on review before the Industrial Commission was held on November 14, 1978. He continued to work full time until January 22, 1979, when he ostensibly left work for vacation. Thus, he had worked steadily since September 12, 1979, a year and four months, missing only 20 days intermittently in that period, and these days he had taken off not on the advice of a doctor, but of his own accord.

This court has held that penalties under section 19(k) and section 19(l) may be awarded only when there has been an award in favor of the claimant and the responsible party has unreasonably delayed paying. (*Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462; *McKay Plating Co. v. Industrial Com.* (1982), 91 Ill. 2d 198.) There was never an award that temporary total disability payments be made to

the employee in this case for the period from January 23 through June 1, 1979, until the award by the Industrial Commission, which also assessed penalties. True, *McKay Plating Co.* stated that there need only be an award, not that it be in the amount the Commission ultimately finds due. However, here the award by the arbitrator was for a period from January to September 1977. The penalty was assessed for failure to pay temporary total disability compensation from January to June, 1979. Between these two periods, the employee had worked regularly for a year and four months, with only intermittent absences. The failure by the board to pay under these circumstances does not demonstrate bad faith or show an unreasonable or vexatious delay. Failure to pay temporary total disability compensation for a period of time immediately following a period for which an award had been made as in *McKay Plating Co.* is an entirely different case from that which we have before us.

The holding of the majority seems to be contrary to the holding of this court in *Chicago Transit Authority v. Industrial Com.* (1981), 86 Ill. 2d 101. In that case the employee was injured in January 1977. She filed an application for adjustment of claim in September 1977. The next month she was discharged for absenteeism. In December 1977 the arbitrator made an award for temporary total disability and also an award for 15% loss of use of her left leg. The award was fully paid by the employer in January 1978. In May 1978 a petition was filed on behalf of the employee under section 19(h) of the Act, which provides for review of an award if the employee's disability has recurred, increased, diminished, or ended. The Industrial Commission found that the award for permanent partial disability should be increased and that the employee was also entitled to additional temporary total disability compensation. The Commission also assessed penalties against the employer under sections 16, 19(k) and 19(*l*) of the Act,

based on the employer's not having paid temporary disability compensation for the additional period of disability. This court held that the assessment of penalties by the Industrial Commission was against the manifest weight of the evidence. In that case there had been a demand by the employee for temporary total disability payments for the subsequent period of disability and there had been a notification to the employer that the employee had undergone surgery on her knee and that it was claimed to have resulted from her previous injury. However, in that case this court did not place the burden on the employer to seek out and ascertain the cause of the disability, as the majority has done in the case now before us, which I shall discuss later. Instead, in *Chicago Transit Authority v. Industrial Com.* we placed the burden on the employee to provide the employer with information from which it could ascertain if compensation was payable.

Contrary to the holding in the case just discussed, the majority opinion in this case places the burden of searching for possible temporary total disability claims on the board of education. In this case there had been no clear demand for payment, nor had there been notice given to the board of education that it was claimed that the subsequent disability was attributable to the prior injury. The majority opinion finds only that there were facts which should have alerted the board of education to the possibility that the subsequent disability was attributable to the prior injury.

The net effect of some of the language used in the majority opinion can only be to produce a substantial amount of litigation in the future. Language to the effect that the employee's prior injury, considered with his sporadic absences, "should have alerted the board to the possibility that his condition had not stabilized" and "if the Board had any real doubts as to whether this new absence was related to the 1977 injury, it should have tried to clarify these doubts" will lead to countless claims for penalties in

cases in which the employer attempts to contest the right of the employee to temporary total disability compensation.

I would hold the assessment of penalties in this case contrary to the manifest weight of the evidence, and I must, therefore, dissent.

UNDERWOOD and MORAN, JJ., join in this dissent.