LINDA CROCKETT, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (American Airlines, Appellee).

First District (Industrial Commission Division)   No. 1—90—2631WC

Opinion filed July 26, 1991.

Rittenberg & Buffen, Ltd., of Chicago (Ivan M. Rittenberg, of counsel), for appellant.

Law Offices of Jobin & Flynn, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:
Petitioner, Linda Crockett, sought workers' compensation benefits for lower back, knee and neck injuries following a work accident sustained in the course of employment with respondent, American Airlines. The arbitrator awarded petitioner medical benefits and $416.25 per week for a period of 52 weeks (June 14, 1987, to September 1,

1988, and October 7, 1988, to July 20, 1989) as temporary total disability. The Industrial Commission (Commission) affirmed the arbitrator's decision awarding petitioner temporary total disability benefits. The Commission disallowed petitioner's claim for penalties and attorney fees pursuant to sections 16, 19(k), and 19(l) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, pars. 138.16, 138.19(k), (l). The circuit court of Cook County modified the decision of the Commission regarding petitioner's weekly wage rate of temporary total disability and confirmed that she was not entitled to penalties and attorney fees. Petitioner's sole challenge on appeal pertains to that portion of the Commission's order disallowing the imposition of penalties and attorney fees.

Petitioner, age 39, was employed by American Airlines as a flight attendant. For the past 17 years, petitioner has been flight certified by respondent's medical department. During a flight from Puerto Rico to Chicago on June 14, 1987, petitioner sustained an injury while walking to the forward part of the cabin when the heel of her shoe caught in the rug near the galley. Petitioner twisted the lower part of her body while avoiding the jump seat, and noticed pain in her knees, neck and lower part of her back. Upon arriving at O'Hare Airport, petitioner was transported to Resurrection Immediate Care Center.

On June 23, 1987, petitioner sought medical treatment from Dr. Olthoff at Chicago Osteopathic Hospital, complaining of pain in her back, right leg and neck. An X ray revealed partial sacralization of L5 at the right. Dr. Olthoff attributed petitioner's condition to the work injury. Petitioner received physical therapy including manipulations and acupuncture on numerous occasions from June through September 1987. In a letter dated July 29, 1987, Dr. Olthoff opined that with physical therapy, complete resolution of pain would occur within 4 to 12 weeks. Petitioner received temporary total disability benefits from the date of injury until she returned to work on September 1, 1987.

Petitioner testified that in October 1987, after receiving physical therapy, the lower back pain and numbness in her leg subsided, but periodically returned. Petitioner also complained that muscle spasms in her neck continued to bother her. Petitioner was referred to Dr. Michael Thomas at Chicago Osteopathic Hospital.

On November 12, 1987, Dr. Thomas referred petitioner to Dr. John Kenny, a chiropractor. Dr. Kenny ordered petitioner to undergo an EMG, which showed no clear cut indication of a lower motor neuron lesion. Dr. Kenny performed numerous chiropractic manipulations for petitioner's neck and low back from November 1987 through May 1988. In a progress report dated December 15, 1987, petitioner's cur-

rent status is described as 50% to 60% improved, and the prognosis is "guarded, but favorable."

Dr. Kenny informed respondent in a letter dated January 26, 1988, that petitioner was currently under his care for a low back condition sustained while at work on June 14, 1987, and recommended that she be placed on light duty to avoid pushing and pulling of carts.

On April 23, 1988, as petitioner was home preparing for work, her right leg buckled and she twisted her lower back while carrying luggage down the stairs. Although petitioner did not fall, she thought at the time that she had twisted her ankle. Petitioner reported this incident to her supervisor, James Moses, and to Dr. Kenny, who prepared two reports of the incident and forwarded them to respondent. On cross-examination, respondent asked petitioner if she told Moses that she had fallen down the stairs in her garage. Petitioner denied making the statement, but respondent never called Moses as a witness.

In a report dated April 26, 1988, Dr. Kenny diagnosed her condition as "re-exacerbation of lumbar sprain/strain." In a report on May 3, 1988, Dr. Kenny opined that petitioner's "current low-back injury is a re-exacerbation of her previous injury that was treated in November" and recommended further examination by respondent's company doctor prior to returning to work. Dr. Kenny subsequently moved his practice out of State, and petitioner received no treatment from May through October 1988. Prior to moving, Dr. Kenny referred petitioner to Dr. Angelo Larcher.

On June 30, 1988, petitioner was examined by Dr. Barry L. Fischer. Dr. Fischer diagnosed petitioner's condition as a lumbosacral strain injury with a loss of range of motion of the lumbar spine in flexion and extension; straight leg raising limited bilaterally, more so on the right, indicating lumbar root irritation. It was Dr. Fischer's opinion that petitioner sustained an injury resulting in permanent partial disability to the right leg of moderate extent with some additional industrial loss of the left leg.

Respondent's physician, Dr. Kowalsky, removed petitioner from work status on October 7, 1988, apparently on the basis that the incident of April 23, 1988, was an intervening accident and not work related. On October 27, 1988, petitioner sought treatment with Dr. Per Frietag of Head Orthopedic Surgery Specialists concerning complaints of numbness in her leg, back pain, and stiffness in the neck. Petitioner testified that she experienced these problems continuously from March through October, and that the pain was more severe at certain times. Dr. Frietag referred petitioner for an MRI on November 3,

1988, which showed a small central herniation at L4-L5 which did not seem to be producing any nerve root compression. Dr. Frietag prescribed physical therapy to be administered by Dr. Larcher and continued treating petitioner through December 1988.

In November 1988, Dr. Frietag advised petitioner that he would recommend surgery if her condition did not improve after physical therapy. In December 1988, Dr. Frietag released petitioner to return to light duty work, provided that she did not perform any lifting over 25 pounds, and no stooping or bending.

Petitioner testified that in January 1989 she noticed that her condition was improving and inquired whether a light-duty position had become available. In February 1989, respondent offered petitioner a position in passenger sales at its Schaumburg facility, but she was unable to accept because of the unavailability of public transportation to that location. (As petitioner was under medication, pain killers, and muscle relaxants, she was not permitted to drive.)

Dr. Frietag referred petitioner to Dr. Spiros G. Stamelos in February 1989. In a letter dated February 26, 1989, Dr. Stamelos opined that petitioner had been plagued with a work-related injury that occurred on June 14, 1987, resulting in bothersome back pain and discomfort that required her to be treated by several orthopedic and osteopathic doctors.

In his deposition, Dr. Stamelos stated that petitioner complained of numbness in her legs, that she could not run, and that her activities were restricted because of the numbness and pain she was experiencing. Petitioner's L4-L5 levels were herniated. On April 27, 1989, petitioner underwent a percutaneous automated diskectomy of L4-L5. After petitioner successfully recovered from surgery, Dr. Stamelos released her to return to full-time work on July 17, 1989.

In a letter dated June 30, 1989, Dr. Stamelos stated that petitioner's long history of severe back pain and leg pain was treated in numerous ways without much success. Dr. Stamelos further stated that petitioner's injury was work related, as manifested by the numbness and thigh pain, and that it affected her working potential.

On June 7, 1989, a petition for an immediate hearing under section 19(b—1) was filed after respondent refused to pay petitioner's medical expenses incurred after March 14, 1988 (including the cost of the MRI and a portion of Drs. Frietag's and Larcher's medical bills). Petitioner subsequently filed for bankruptcy.

The arbitrator concluded that as a result of the injury sustained during the course of employment on June 14, 1987, petitioner was

temporarily totally disabled for a period of 52 weeks and was entitled to $11,080.02 for reasonable and necessary medical expenses.

Respondent sought review, but the Commission upheld the arbitrator's decision. The Commission found that petitioner did not sustain an intervening accident on April 23, 1988, and that the work injury itself caused her subsequent medical problems. Thus, the chain of causation had not been broken. The Commission, however, found the imposition of additional compensation and penalties inappropriate, as it was not unreasonable for the respondent to believe that an intervening cause had occurred. The circuit court confirmed the decision of the Commission as to penalties and attorney fees.

■■ ■ The Act provides an income stream to an injured worker, who is typically left without income while he is disabled. (*Avon Products, Inc. v. Industrial Comm'n* (1980), 82 Ill. 2d 297, 412 N.E.2d 468.) Sections 19 (k) and (l) are intended to prevent bad-faith and unreasonable withholding of compensation benefits from injured workers. (*Board of Education v. Industrial Comm'n* (1982), 93 Ill. 2d 1, 442 N.E.2d 861.) The penalty section provides in pertinent part as follows:

"§16. ***

***

Whenever the Commission shall find that the employer, his or her agent, service company or insurance carrier has been guilty of delay or unfairness towards an employee in the adjustment, settlement or payment of benefits due such employee *** or has been guilty of unreasonable or vexatious delay, intentional under-payment of compensation benefits, or has engaged in frivolous defenses which do not present a real controversy within the purview of the provisions of paragraph (k) of Section 19 of this Act, the Commission may assess all or any part of the attorney's fees and costs against such employer and his insurance carrier." Ill. Rev. Stat. 1985, ch. 48, par. 138.16.

■■ ■ Where a delay has occurred in payment of workers' compensation benefits, the employer bears the burden of justifying the delay. (*Board of Education v. Industrial Comm'n* (1982), 93 Ill. 2d 1, 442 N.E.2d 861, citing *City of Chicago v. Industrial Comm'n* (1976), 63 Ill. 2d 99, 345 N.E.2d 477.) The test is whether the employer's reliance was objectively reasonable under the circumstances. (*Consolidated Freightways, Inc. v. Industrial Comm'n* (1985), 136 Ill. App. 3d 630, 483 N.E.2d 652.) Whether an employer has acted reasonably in refusing to pay benefits is to be decided on a case-by-case basis; and whether the employer's conduct justifies the imposition of penalties is

to be considered in terms of reasonableness. (*McKay Plating Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 198, 437 N.E.2d 617.) This is a question of fact, and a court will not disturb the Commission's determination unless it is contrary to the manifest weight of the evidence. (*Board of Education v. Industrial Comm'n* (1982), 93 Ill. 2d 1, 442 N.E.2d 861.) The employer bears the burden of justifying the delay in paying the benefits. *City of Chicago v. Industrial Comm'n* (1976), 63 Ill. 2d 99, 345 N.E.2d 477.

■■■ After careful review of the record in this case, we find that respondent's actions in delaying section 8(b) benefits to petitioner fails to meet the objective standard of reasonableness as set forth above. At the outset, we note that though petitioner returned to work on September 1, 1987, she continued to experience lower back pain, numbness in her legs, and neck pain. As a result, she began receiving chiropractic manipulations from Dr. Kenny in November 1987, and continued treatments through May 1988. Dr. Kenny described petitioner's status as "50-60%" improved in a progress report dated December 15, 1987; subsequently, on January 26, 1988, Dr. Kenny ordered that she be placed on light duty.

While the Commission stated that it was not "unreasonable for respondent to believe that an intervening accident had occurred" on April 23, 1988, when petitioner's leg buckled while she was carrying luggage, we find that determination to be against the manifest weight of the evidence. Immediately after her leg buckled in this incident, petitioner informed Dr. Kenny, who diagnosed petitioner's condition as a "*re-exacerbation* of lumbar sprain/strain"; moreover, that evaluation was repeated in his report dated May 3, 1988. (Emphasis added.) Similarly, Dr. Fischer diagnosed petitioner's condition on June 30, 1988, as a "lumbosacral strain injury" resulting in permanent partial disability to the right leg.

Petitioner testified that she experienced numbness in her leg, back pain and stiffness in the neck continuously from March through October 1987. Nevertheless, petitioner continued to work in spite of her pain and discomfort until respondent's physician, Dr. Kowalsky, removed her from work status on October 7, 1988. Significantly, petitioner inquired of respondent as to why her benefits were ceased. Respondent's agent replied in writing that Dr. Kowalsky had informed respondent that petitioner's present condition was not work related. Yet respondent offered no evidence from Dr. Kowalsky, thus leaving as unrebutted the medical evidence offered by petitioner that the incident of April 23, 1988, was not an intervening accident.

Shortly after Dr. Kowalsky made his decision, on November 3, 1988, petitioner underwent an MRI and continued on a course of extensive physical therapy with Dr. Larcher. Finally, petitioner's low back injury culminated in a percutaneous automated diskectomy on April 27, 1989. Petitioner's surgeon, Dr. Stamelos, cited the work-related injury sustained on June 14, 1987, as the source of her bothersome back pain and discomfort that required treatment by several orthopedic and osteopathic doctors.

We find the extensive medical evidence in this case provided respondent with clear proof that petitioner was still suffering low back, neck and leg problems sustained during the June 14, 1987, injury. Respondent's insistence upon an intervening accident is unreasonable under the circumstances here, especially in view of the fact that no adverse evidence was presented at arbitration or before the Commission. Therefore, we hold that the imposition of penalties and attorney fees for unreasonably withholding benefits from petitioner is warranted in the present case. The record indicates that petitioner was anxious to return to work for financial reasons, and entered into bankruptcy proceedings over the course of her illness. We find that respondent's refusal to extend section 8(b) benefits to petitioner is indeed vexatious and unfair under the facts in this case, which demonstrate the continuing nature of petitioner's injury over an extended period of time.

Accordingly, the judgment of the circuit court of Cook County is reversed. The cause is remanded to the Commission to award appropriate penalties and attorney fees under the Act.

Reversed and remanded with directions.

McCULLOUGH, P.J., and WOODWARD, STOUDER, and LEWIS, JJ., concur.