Industrial Commission Division
 Filed: 01/24/02

 No. 1-00-3895WC

 IN THE APPELLATE COURT OF ILLINOIS
 FIRST JUDICIAL DISTRICT
 INDUSTRIAL COMMISSION DIVISION

STEVEN BUNNOW, ) Appeal from the
 ) Circuit Court of
 Appellant, ) Cook County
 )
 ) Nos. 98 L 51168
 v. ) 99 L 50510
 ) 99 L 50558
 )
THE INDUSTRIAL COMMISSION et al., )
(Chicago Suburban Express, ) Honorable
 ) Joanne Lanigan,
 Appellee). ) Judge Presiding.

 JUSTICE HOFFMAN delivered the opinion of the court:

 The Industrial Commission (Commission) awarded the claimant, Steven Bunnow, temporary total
disability (TTD) benefits and medical expenses in connection with his application for adjustment of
claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 1996)). The
Commission also ordered the payment of attorney fees and penalties pursuant to sections 16 and 19 of
the Act (820 ILCS 305/16, 19 (West 1996)) , respectively, for the under-payment of TTD benefits.
The circuit court of Cook County confirmed the Commission’s decision. The claimant has appealed,
arguing that he is also entitled to an award of attorney fees and penalties for the non-payment of
medical expenses. For the following reasons, we vacate the order of the circuit court, confirm in
part and set aside in part the Commission's decision, and remand the case to the Commission with
directions.
 On December 2, 1996, the claimant was involved in an accident while driving a tractor owned by
Champion Trucking (Champion) and hauling a trailer owned by Chicago Suburban Express (Suburban).
The claimant's truck jack-knifed, fell on its side, slid into a concrete bridge, and burst into
flames. It is uncontested that the claimant suffered severe injuries as a result of the accident,
for which he has required extensive medical treatment.
 On March 4, 1997, the claimant filed an amended application for adjustment of claim under the
Act, naming both Champion and Suburban as his employers. On September 12, 1997, the claimant filed
a petition seeking the payment of penalties and attorney fees for the under-payment of TTD benefits
and the non-payment of medical bills.
 On January 23, 1998, an arbitrator conducted a hearing at which evidence establishing the
following facts was introduced.
 In December 1996, in addition to his full-time job, the claimant worked part-time driving a
semi-truck for Champion, a cartage company located in Fredonia, Wisconsin. Champion hired the
claimant in June or July 1995, after he responded to an advertisement in the newspaper for a line
haul driver. The claimant worked two days per week for Champion hauling freight between Fredonia
and Chicago, where he would deliver the freight to Suburban, which is also a cartage company. The
claimant testified that, when he reported to work at Champion, he would get "the papers" for the
load he would be hauling from Jennifer Moegenburg, Champion's vice-president. According to the
claimant, he would then do a safety inspection on his truck, make sure the truck was properly
placarded, and drive to Suburban, which he described as a "warehouse transfer point." When the
claimant arrived at Suburban, he would back his truck up to the warehouse or docking area, unhook
the trailer, and give his papers to Suburban's dispatcher. According to the claimant, the
dispatcher would give him the papers for his return load. The claimant would then check to make
sure the truck was properly placarded, rehook the trailer, do a safety inspection, and drive back to
Champion in Fredonia.
 The claimant testified that it was always his understanding that Champion was his employer.
Champion issued his weekly paychecks and withheld sums for the payment of taxes and social security.
 The claimant stated that, if Suburban gave him instructions regarding special handling of freight,
he would comply with those instructions; although, he further testified that he had only received
such special instructions from Suburban once, when he was told not to let a load which contained
liquid freeze. According to the claimant, it was his understanding that Suburban's employees
wanted his truck at their facility by 10 p.m. so they could unload it before the end of their shift.
 It was also the claimant’s understanding that Suburban had the authority to fire him if he were
driving recklessly, arrived at its facility intoxicated, or "was crummy" at his job. The claimant
further testified that the manifest and bills of lading for the loads he carried contained
Suburban's name.
 According to the claimant, the accident at issue occurred around 11:30 p.m. on December 2,
1996, as he was driving from Chicago back to Fredonia. As no party contests the extent of the
claimant's injuries or the fact that they arose from the accident in question, we will not recount
the injuries he sustained or medical services he received.
 The claimant testified that, since the date of the accident, he had been receiving $224 per
week from Milwaukee Insurance. However, none of his medical bills had been paid. According to the
claimant, he receives three letters in the mail per day regarding overdue medical bills, has stopped
answering his telephone due to calls from creditors, and has received counseling to deal with
financial pressures. The claimant further testified that his doctors had recommended various
additional surgeries. One surgery in particular had been scheduled for the week of his deposition
but was rescheduled because the doctors would not perform the surgery without guarantee of payment.
 Champion's vice-president, Jennifer Moegenburg, testified that Champion had entered into a
business relationship with Suburban about 10 years prior, although the two companies had no written
contract. According to Moegenburg, Champion's services were initially limited to picking up freight
which Suburban drivers had delivered to Milwaukee and delivering it to local Suburban customers.
About three years into the business relationship, though, Suburban asked Champion to also start
doing line hauls to Chicago.
 The evidence established that Champion used its own tractor for the line hauls but that the
trailers it hauled were owned by Suburban. Champion was paid a flat line haul fee of $250 per load
plus 25% of the total revenue of each load its drivers hauled. Champion paid for the fuel used and
tolls incurred. Champion did not have its own authority to haul freight in Illinois. Consequently,
Champion and Suburban entered into an equipment lease which provided in pertinent part as follows:
 "Representations of Parties. Lessor [Suburban] represents that it is the owner of the
 equipment and has the authority to enter into this lease; that it gives the equipment over to
 the exclusive use, direction and control of Lessee [Champion] during periods when the equipment
 is operated by or for Lessee; and that it will cooperate fully with Lessee in complying with
 applicable statutes and regulations. Lessee represents that it is familiar with and will
 comply with all statutes and regulations, state and federal, regarding safety or otherwise."
The lease also provided that "this lease is subject to the provisions of the Illinois Commercial
Transportation Law, as well as other provisions of the Illinois Vehicle Code, and regulations
adopted thereunder. ICC lease regulations are published in 92 Ill. Adm. Code 1360". Section
1360.40 b of Title 92 of the Illinois Administrative Code provides that:
 "The lessee shall have exclusive possession and control of leased equipment during all periods
 when the equipment is operated under the lease. Such exclusive possession and control shall
 extend also to the drivers of leased equipment." 92 Ill. Adm. Code §1360.40 b (amended October
 12, 1993).
Both Moegenburg and Douglas Stephan, Suburban's operations manager, testified that they had not read
the back of the lease, which is where the above-quoted lease provisions appear. Stephan testified
that Suburban's only intention in entering into the lease was to allow Champion to operate in
Illinois pursuant to Suburban's ICC authority.
 Moegenburg testified that Champion had Suburban's name and ICC number painted on the doors of
the tractors it used for the line hauls and that Suburban never admonished Champion not to do so.
Moegenburg acknowledged that Champion is solely responsible for training its drivers, determining
the drivers' routes, and maintaining its tractors. Champion also performs all employee evaluations
and determines the amount of raises.
 Stephan testified that Champion chooses the driver and the truck to be used for the line
hauls. Stephan further testified that Suburban did not take part in the claimant's hiring, nor did
it give the claimant instructions as to how to perform his job or when to arrive in Chicago.
According to Stephan, if any of Suburban's customers had a request that a load be picked up at a
certain time, he would pass that information on to Champion. If a Suburban customer had a complaint
about a Champion driver, Stephan would give the customer Champion's telephone number. Stephan
further testified that, if a Champion driver arrived at the dock intoxicated, he would not be
allowed to pick up a load and Stephan would inform Champion of the incident. Similarly, if Stephan
received a complaint that a Champion driver was driving recklessly, he would turn the complaint over
to Champion. Stephan testified that Suburban did not have the authority to fire the claimant.
 Following the hearing, the arbitrator issued a decision finding, inter alia, that the claimant
was an employee of Champion and that Champion did not have a borrowing/loaning employer relationship
with Suburban. The arbitrator awarded the claimant TTD benefits of $450.56 per week for 41 weeks
and ordered Champion to pay $777,584.57 in medical expenses. Additionally, the arbitrator ordered
that "CHAMPION TRUCKING and CHICAGO SUBURBAN EXPRESS, and each of them shall pay" the claimant
penalties and attorney fees in the following amounts: $4,837.87 pursuant to section 19(k) of the Act
(820 ILCS 305/19(k) (West 1996)); $2,500 pursuant to section 19(l) of the Act (820 ILCS 305/19(l)
(West 1996)); and $1,467.57 in attorney fees pursuant to section 16 of the Act (820 ILCS 305/16
(West 1996)). These penalties were for non-payment of TTD benefits only, not medical expenses.
 Champion and Suburban both filed petitions for review of the arbitrator's decision. Champion
argued that the arbitrator erred in finding that Suburban was not a borrowing employer and in
assessing section 19(k) penalties and section 16 fees. Suburban asserted that the arbitrator erred
in assessing section 19(k) penalties and section 16 fees against it after having concluded that it
was not the claimant's employer. The claimant did not file a petition for review of the
arbitrator's decision. He did, however, file a statement of exceptions in which he argued that the
arbitrator erred in failing to find a borrowing/lending employer relationship between Champion and
Suburban. The claimant did not raise the issue of penalties and attorney fees for the non-payment
of medical expenses in his statement of exceptions.
 On October 21, 1998, the Commission heard oral argument on the petitions for review. The
following day, the Illinois Supreme Court issued its decision in McMahan v. Industrial Comm'n, 183
Ill. 2d 499, 702 N.E.2d 545 (1998), in which it held that penalties pursuant to section 19(k) of the
Act and attorney's fees pursuant to section 16 of the Act can be awarded based on the non-payment of
medical expenses. The McMahan decision constituted a departure from the supreme court’s earlier
holding to the contrary on this same issue in Childress v. Industrial Comm’n, 93 Ill. 2d 144, 442
N.E.2d 841 (1982). Thereafter, on December 7, 1998, before the Commission issued its decision in
this case, the claimant filed a motion for reconsideration on the issue of penalties based upon
McMahan. This motion is not contained in the record.
 On December 10, 1998, the Commission issued its decision on review. The Commission found
that: a borrowing/loaning employer relationship existed between Champion and Suburban; Suburban, as
the borrowing employer, is primarily responsible for the payment of all compensation, medical
expenses, penalties, and attorney fees; and Champion, as the loaning employer, is secondarily liable
for all compensation, medical expenses, penalties, and attorney fees. In support of its conclusion
that Suburban was a borrowing employer, the Commission relied upon the lease agreement between
Champion and Suburban and upon the following facts: Suburban instructed the claimant as to what time
he needed to arrive in Chicago; Suburban had given the claimant special delivery instructions on
occasion; Suburban's name and ICC number appeared on the tractor; all trailers hauled belonged to
Suburban; and Suburban had the ability to fire the claimant if he was driving recklessly or arrived
for work intoxicated. The Commission left undisturbed the amount of TTD benefits and medical
expenses awarded and the amount of penalties assessed pursuant to subsections (k) and (l) of section
19 of the Act, but modified the amount of attorney fees to be paid pursuant to section 16 of the
Act, lowering it from the $1,467.57 awarded by the arbitrator to $967.57. The Commission's decision
contains no discussion of the issue of penalties for the non-payment of medical expenses.
 On December 23, 1998, the claimant filed an amended motion for reconsideration on the issue of
penalties and a motion to recall the Commission's decision pursuant to section 19(f) of the Act (820
ILCS 305/19(f)(West 1996)). These motions are not contained in the record.
 On December 29, 1998, Suburban filed a request for summons and review in the circuit court of
Cook County, which was docketed as number 98 L 51168. Thereafter, on January 7, 1999, Suburban filed
before the Commission a motion to quash and strike the claimant's motion for reconsideration on the
issue of penalties and his motion to recall the Commission's decision. On January 13, 1999, the
claimant filed before the Commission yet another motion for reconsideration on the issue of
penalties. Neither the January 7 motion nor the January 13 motion is contained in the record.
 On January 26, 1999, Commissioner Michael Weaver conducted a hearing on the parties' motions,
a transcript of which hearing is contained in the record. On May 7, 1999, Commissioner Weaver
issued an order granting Suburban's motion to quash and denying the claimant's motions to reconsider
and his motion to recall the Commission's decision pursuant to section 19(f). In his order,
Commissioner Weaver found that the Commission's December 10, 1998, order "does not contain an error
on the computation of penalties" and that "the Commission lacks jurisdiction to reinstate or
reconsider its Decision and Opinion on Review *** due to subsequent legal precedence [sic] which was
not available to the Commission until after its decision was rendered." Thereafter, on May 26,
1999, the claimant filed a request for summons and review in the circuit court of Cook County, which
was docketed as number 99 L 50510. On June 7, 1999, Suburban filed a request for summons and review
in the circuit court, which was docketed as number 99 L 50558. The three actions for judicial
review (docket numbers 98 L 51168, 99 L 50510, and 99 L 50558) were subsequently consolidated by
order of the circuit court.
 Before the circuit court, Suburban argued that the Commission's finding that it had a
borrowing/lending employer relationship with Champion is against the manifest weight of the
evidence. The claimant argued that the Commission's decision denying penalties based on the non-
payment of medical expenses is against the manifest weight of the evidence. The circuit court
initially found that the claimant's petition to recall the Commission's decision pursuant to section
19(f) did not toll the time for the filing of a request for summons and review and that,
accordingly, the claimant's action, which was docketed as number 99 L 50510, was untimely and did
not vest the court with jurisdiction. The court went on to state, however, that, by virtue of the
timely request for summons and review Suburban filed on December 29, 1998, which was docketed as
number 98 L 51168, it had jurisdiction to review the entire record and could consider the claimant's
contentions pursuant thereto. Ultimately, the circuit court rejected the arguments of both parties
and confirmed the Commission's December 10, 1998, decision. The claimant filed the instant timely
appeal.
 The claimant first argues that Commissioner Weaver erred in finding that his motion to recall
the Commission's December 10, 1998, decision was not a proper motion pursuant to section 19(f) of
the Act and that it did not vest the Commission with jurisdiction to modify its decision.
 Pursuant to section 19(f) of the Act, a decision of the Commission is conclusive unless a
proceeding for judicial review of the decision is commenced by the filing of a request for the
issuance of a summons within 20 days of the receipt of the Commission's decision. 820 ILCS
305/19(f) (West 1996). The Commission may, however, on its own motion or the motion of any party,
recall its decision in order to correct "any clerical error or errors in computation" within 15 days
of the receipt of the decision. 820 ILCS 305/19(f) (West 1996).
 The question presented here is whether the claimant's motion to recall was properly brought
pursuant to section 19(f).
 The parties agree that the Commission awarded section 19(k) penalties based only on the amount
of TTD benefits to which the claimant was entitled at the time of the award. The claimant asserts
that the Commission committed a computational error because it should have computed the amount of
penalties based on not only the TTD benefits to which he was entitled, but on the amount of medical
expenses to which he was entitled as well. Suburban disputes the notion that the Commission's
decision contained a computational error, arguing that the Commission did not simply forget to
include the amount of medical expenses due to the claimant when it computed section 19(f) penalties
but that the Commission never intended to award penalties for the non-payment of medical expenses.
As such, it contends, the claimant's motion to recall the Commission's decision was nothing more
than a motion for reconsideration of the Commission's denial of penalties for the non-payment of
medical expenses. Motions for reconsideration are not allowed by the Act and, accordingly, do not
toll the time for the filing of a summons for review in the circuit court. See Wilson-Raymond
Constructors Co. v. Industrial Comm'n, 79 Ill. 2d 45, 56, 402 N.E.2d 584 (1980); Christman v.
Industrial Comm'n, 132 Ill. App. 3d 891, 893, 478 N.E.2d 498 (1985).
 The word computation is defined not only as the "the act or action of computing" but also as
"a way or system of reckoning". Webster's Third New International Dictionary 468 (1993). In our
opinion, by this definition, the term "computational error" encompasses both the use of an incorrect
mathematical formula and any mistakes in performing the mathematical functions, such as addition or
multiplication, needed to implement that formula. In order to determine whether the Commission
made a computational error in calculating the amount of penalties, we look to section 19(k).
 Section 19(k) of the Act provides that, where appropriate, the Commission "may award
compensation additional to that otherwise payable under this Act equal to 50% of the amount payable
at the time of such award." 820 ILCS 305/19(k) (West 1996). Thus, the formula for calculating
section 19(k) penalties can be stated as: (amount of compensation payable) x .50. Our inquiry
cannot end there, as we must determine what constitutes compensation.
 In Childress, our supreme court held that the term compensation, as used in both sections 16
and 19(k) of the Act, was limited to compensation due the claimant in the form of lost wages, or TTD
benefits. See Childress, 93 Ill. 2d at 148-49. In McMahan, though, our supreme court overruled its
prior holding and held that the term compensation, as used in the relevant sections, is not limited
to compensation for lost wages, but also includes compensation due in the form of payment of medical
expenses. McMahan, 183 Ill. 2d at 511-14. As stated earlier, McMahan was decided after the
Commission had conducted oral argument in the instant case, but before it issued its decision.
Although Suburban argues, and the circuit court found, that McMahan announced a new rule of law and,
thus, should only be applied prospectively and not to the instant case, we cannot agree. In Scott
v. Industrial Comm'n, 184 Ill. 2d 202, 703 N.E.2d 81 (1998), issued the same day as McMahan, the
supreme court reversed in part the circuit court's order confirming the Commission's decision and
remanded the case to the Commission with directions to, inter alia, reconsider the matter of
penalties and fees. In doing so, the Scott court stated that "on remand the calculation of
penalties, if any, should be guided by our recent decision in McMahan v. Industrial Comm'n, 183 Ill.
2d 499 (1998), which overruled in part Childress v. Industrial Comm'n, 93 Ill. 2d 144 (1982)."
Scott, 184 Ill. 2d at 221. Thus, it is clear that our supreme court intended the rule announced in
McMahan to apply to pending cases.
 Suburban, however, contends that McMahan is inapplicable here for yet another reason. Suburban
correctly states that McMahan does not stand for the proposition that penalties and attorney fees
must always be assessed for the non-payment of medical expenses. It asserts that, unlike the
employer in McMahan, its refusal to pay the claimant's medical expenses was reasonable based upon
the facts in evidence. As such, Suburban contends, the Commission was justified in refusing to
assess penalties against it for the non-payment of medical expenses.
 It is true that penalties will not be imposed in circumstances where an employer reasonably
could have believed that the claimant was not entitled to compensation. Board of Education v.
Industrial Comm'n, 93 Ill. 2d 1, 9-10, 442 N.E.2d 861 (1982); Complete Vending Services, Inc. v.
Industrial Comm'n, 305 Ill. App. 3d 1047, 1050, 714 N.E.2d 30 (1999). However, the question of
whether an employer acted unreasonably or vexatiously in declining to pay benefits under the Act or
whether it acted reasonably under the circumstances is one of fact to be resolved by the Commission,
whose resolution of the matter will not be disturbed on appeal unless contrary to the manifest
weight of the evidence. Roodhouse Envelope Co. v. Industrial Comm'n, 276 Ill. App. 3d 576, 579, 658
N.E.2d 838 (1995); Continental Distributing Co. v. Industrial Comm'n, 98 Ill. 2d 407, 415-16, 456
N.E.2d 847 (1983). In awarding the claimant penalties pursuant to section 19(k) of the Act and
attorney fees pursuant to section 16 of the Act based on the under-payment of TTD benefits, the
Commission implicitly found that Suburban's refusal to pay such benefits was unreasonable or
vexatious. See 820 ILCS 305/19(k) (West 1996); 820 ILCS 305/16 (West 1996). The trial court
confirmed the Commission's decision, and Suburban has not appealed. Suburban has never contested
the reasonableness of the claimant's medical expenses or that they are wholly attributable to his
December 2, 1996, accident. As such, there was never any question that, if Suburban was liable to
pay the claimant TTD benefits, it was also liable to pay all of the medical expenses at issue.
Accordingly, if Suburban's failure to pay TTD benefits was unreasonable or vexatious, as the
Commission implicitly found, so too was its failure to pay the claimant's medical expenses.
 As we have determined that the rule announced in McMahan applies to the instant case, it
follows that the formula which the Commission was required to use in calculating the claimant's
section 19(k) penalties is as follows: (TTD benefits + medical expenses) x .50. The Commission,
however, computed the penalty using the following incorrect formula: (TTD benefits) x .50. We find
that, as the Commission used the wrong formula to calculate section 19(k) penalties, it's December
10, 1998, decision contained a computational error. As such, the claimant's motion to recall was
properly brought pursuant to section 19(f), and the Commission erred in denying the claimant's
motion to recall its decision to correct the computational error.
 For the reasons stated above, we find that the circuit court erred in confirming the
Commission's decision in its entirety. As such, we: 1) vacate the circuit court's order confirming
the Commission's decision in its entirety; 2) confirm the Commission's decision only with respect to
the award of TTD benefits and medical expenses and to the award of section 19(l) penalties, which
are not in dispute; 3) set aside the portion of the Commission's decision awarding the claimant
section 19(k) penalties and section 16 attorney fees; and 4) remand the case to the Commission with
directions that it determine the proper amount of section 19(k) penalties to which the claimant is
entitled in accordance with McMahan and, after doing so, to assess the amount of attorney fees it
deems reasonable pursuant to section 16 of the Act.
 Circuit court order vacated; Commission's decision confirmed in part and set aside in part;
cause remanded to the Commission with directions.
 McCULLOUGH, P.J., and O'MALLEY, HOLDRIDGE, and RARICK, JJ., concur.